IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

APPEAL NO. 16-14959-AA

———————————————

UNITED STATES OF AMERICA,

Appellee,

v.

GEORGE ADRIEN BROOKS,

Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

———————————————

INITIAL BRIEF

———————————————

Donna Lee Elm
Federal Defender

Conrad Kahn
Research and Writing Attorney
Appellate Division
Florida Bar Number 104456
201 South Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: (407) 648-6338
E-mail: Conrad_Kahn@fd.org
Counsel for Appellant

## Appeal No. 16-14959-AA

### *United States of America* **v.** *George Adrien Brooks*

## CERTIFICATE OF INTERESTED PERSONS

The persons listed below are interested in the outcome of this case:

Baker, Honorable David A.

Bentley, III, A. Lee

Brooks, George Adrien

Cakmis, Rosemary

Cream, Anita M.

Elm, Donna Lee

Kahn, Conrad

Langs, Stephen J.

Mendoza, Honorable Carlos E.

Miranda, Ilianys Rivera

Rhodes, David P.

Scott, Alisha Marie

Sholl, Peter J.

Skuthan, James T.

Smith, Honorable Thomas B.

## STATEMENT REGARDING ORAL ARGUMENT

Brooks respectfully requests oral argument. This appeal presents several complex issues, including a question of first impression about whether courts must employ a categorical approach when analyzing whether a charged offense qualifies as a crime of "child molestation" under F.R.E. 414. Oral argument by counsel familiar with facts and legal issues will assist this Court in resolving this record-intense appeal.

T<small>ABLE OF</small> C<small>ONTENTS</small>

**Contents**                                                         **Page**

Certificate of Interested Persons ........................................................... C1

Statement Regarding Oral Argument ........................................................ i

Table of Contents ............................................................................... ii

Table of Citations .............................................................................. v

Statement of Subject Matter and Appellate Jurisdiction ......................... xi

Statement of the Issues ........................................................................ 1

Statement of the Case .......................................................................... 2

Course of Proceedings and Disposition in the Court Below .................... 2

Statement of Facts .............................................................................. 2

    1.  Pretrial Motions/Objections ..................................................... 2

    2.  Jury Selection ......................................................................... 4

    3.  Trial Testimony ...................................................................... 6

    4.  Motions for Judgment of Acquittal ......................................... 10

    5.  Jury Instructions and Closing Arguments ............................... 10

Standards of Review ......................................................................... 12

Summary of Arguments ..................................................................... 14

Arguments and Citations of Authority ................................................ 19

ii

TABLE OF CONTENTS—*CONTINUED*

**Contents**                                                          **Page**

I.     The district court clearly erred in overruling Brooks' *Batson* objections where it failed to evaluate the government's stated reason, it injected its own race-based reason for upholding the strike, and the government's reason applied equally to non-stricken jurors. ....................................19

II.    The district court clearly erred by denying Brooks' motion for mistrial where the government disclosed e-mails at trial that it previously represented were inaccessible..........................24

III.   The district court erred by denying Brooks' requested instruction on the definition of "induce" where the pattern instruction was incomplete and misleading and Brooks' instruction was an accurate statement of the law................................29

IV.   The district court erred by denying Brooks' theory of defense instruction...............................................................................34

V.    The jury instructions constructively amended the indictment by including an additional means of interstate commerce not included in the indictment ...........................................36

VI.   The Gopoian evidence was erroneously admitted under Rules 414 and 403, F.R.E., because 18 U.S.C. §2422(b) does not categorically qualify as a "child molestation" crime, and the testimony was unduly prejudicial................................39

       A.    Attempted Enticement of a Minor under §2422(b) does not qualify as a "child molestation" crime under Rule 414 .......................................................................40

       B.    The district court abused its discretion in admitting Gopoian's testimony because the probative value of the testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.............................................................44

## TABLE OF CONTENTS—*CONTINUED*

**Contents**                                                                                              **Page**

VII.   The district court abused its discretion when it admitted,
as inextricably intertwined, Brooks' statements about his
conversation with the father of a twelve-year-old boy .......................47

VIII.  The evidence was insufficient because it failed to show
Brooks intended to cause or took a substantial step toward
causing a minor's assent to sexual activity .........................................49

IX.    The cumulative effect of the district court's errors
deprived Brooks of a fair trial ............................................................51

Conclusion ........................................................................................................52

Certificate of Compliance .................................................................................53

Certificate of Service ........................................................................................53

iv

## TABLE OF CITATIONS

**Cases**                                                                                          **Page(s)**

*Adkins v. Warden, Holman CF*, 710 F.3d 1241 (11th Cir.2013)......................22, 22

\* *Batson v. Kentucky*, 476 U.S. 79 (1986)..............................................*passim*

*Bui v. Haley*, 321 F.3d 1304 (11th Cir.2003) ....................................20, 21

*Doe No. 1 v. United States*, 749 F.3d 999 (11th Cir.2014)......................................13

*J.E.B. v. Alabama*, 511 U.S. 127 (1994)...................................................23

*Johnson v. United States*, 135 S.Ct. 2551 (2015) ....................................43

*Madison v. Comm'r, Alabama DOC*, 761 F.3d 1240 (11th Cir.2014)...................20

*McGahee v. Alabama DOC*, 560 F.3d 1252 (11th Cir.2009)...........................20, 22

\* *Miller-El v. Dretke*, 545 U.S. 231 (2005) .......................................... 20-23

*Neder v. United States,* 527 U.S. 1 (1999).........................................13, 31

\* *Nijhawan v. Holder*, 575 U.S. 29 (2009) .......................................... 41-43

*Parker v. Allen*, 565 F.3d 1258 (11th Cir.2009).........................................20, 21, 23

*Powers v. Ohio*, 499 U.S. 400 (1991).....................................................23

\* *Snyder v. Louisiana*, 552 U.S. 472 (2008)...................................12, 19, 21

*Stirone v. United States*, 361 U.S. 212 (1960).......................................36

*Taylor v. United States*, 495 U.S. 575 (1990)...................................41, 42

*Trawick v. Allen*, 520 F.3d 1264 (11th Cir.2008)...................................23

v

TABLE OF CITATIONS—*CONTINUED*

**Cases**                                                                **Page(s)**

*United States v. Alvarado*, 808 F.3d 474 (11th Cir.2015) ..........................11, 33, 34

*United States v. Baker*, 432 F.3d 1189 (11th Cir.2005) ...................................14, 52

*United States v. Behety*, 32 F.3d 503 (11th Cir.1994) .......................................36, 37

*United States v. Bradley*, 644 F.3d 1213 (11th Cir.2011) .......................................13

*United States v. Brimm*, 608 F.App'x 795 (11th Cir.2015)....................................42

*United States v. Bunty,* 617 F.Supp.2d 359 (E.D.Pa. 2008) ...................................46

*United States v. Browne*, 505 F.3d 1229 (11th Cir.2007)........................................13

\* *United States v. Camargo-Vergara*, 57 F.3d 993 (11th Cir.1995) ................... 25-29

*United States v. Campa*, 529 F.3d 980 (11th Cir.2008) .........................................19

*United States v. Chavez*, 584 F.3d 1354 (11th Cir.2009) ........................................12

*United States v. Courtright*, 632 F.3d 363 (7th Cir.2011)................................42, 43

*United States v. Curley*, 639 F.3d 50 (2d Cir.2011) ...............................................46

*United States v. Dickinson*, 16 F.Supp.3d 230 (W.D.N.Y. 2014) ..........................46

*United States v. Dodds*, 347 F.3d 893 (11th Cir.2003)...........................................45

*United States v. Dohan*, 508 F.3d 989 (11th Cir.2007) ..........................................29

*United States v. Edouard*, 485 F.3d 1324 (11th Cir.2007) .....................................47

*United States v. Evans*, 344 F.3d 1131 (11th Cir.2003) .........................................14

TABLE OF CITATIONS—*CONTINUED*

**Cases**                                                                                    **Page(s)**

*United States v. Farner*, 251 F.3d 510 (5th Cir.2001)...............................................31

*United States v. Fawbush,* 634 F.3d 420 (8th Cir.2011) ........................................46

*United States v. Fortenberry*, 971 F.2d 717 (11th Cir.1992) ..................................48

*United States v. Frazier*, 387 F.3d 1244 (11th Cir.2004) ........................................13

*United States v. Gamory*, 635 F.3d 480 (11th Cir.2011) .........................................13

*United States v. Gomez,* 580 F.3d 1229 (11th Cir.2009) .........................................12

*United States v. Gutierrez*, 745 F.3d 463 (11th Cir.2014).......................................13

*United States v. Hands*, 184 F.3d 1322 (11th Cir.1999)..........................................51

*United States v. Hicks*, 457 F.3d 838 (8th Cir.2006) ...............................................31

* *United States v. Hite*, 769 F.3d 1154 (D.C. Cir.2014)................................30, 32, 50

*United States v. Horsley*, 864 F.2d 1543 (11th Cir.1989) .......................................21

*United States v. Houston*, 456 F.3d 1328 (11th Cir.2006) ............................... 20-22

*United States v. Jernigan,* 341 F.3d 1273 (11th Cir.2003).....................................45

*United States v. Kramer*, 631 F.3d 900 (8th Cir.2011)............................................38

*United States v. Ladson*, 643 F.3d 1335 (11th Cir.2011) ........................................51

* *United States v. Lee*, 603 F.3d 904 (11th Cir.2010) .........................................*passim*

*United States v. LeMay*, 260 F.3d 1018 (9th Cir.2001)...........................................44

*United States v. Lively*, 803 F.2d 1124 (11th Cir.1986) ..........................................33

TABLE OF CITATIONS—*CONTINUED*

| Cases | Page(s) |
|---|---|
| *United States v. Martinez*, 763 F.2d 1297 (11th Cir.1985) | 28 |
| *United States v. Mathis*, 767 F.3d 1264 (11th Cir.2014) | 38 |
| *United States v. McGarity,* 669 F.3d 1218 (11th Cir.2012) | 40, 44, 45 |
| *United States v. Meek*, 366 F.3d 705 (9th Cir.2004) | 31 |
| *United States v. Morris*, 20 F.3d 1111 (11th Cir.1994) | 13, 33 |
| *United States v. Mozie*, 752 F.3d 1271 (11th Cir.2014) | 39 |
| *United States v. Narog*, 372 F.3d 1243 (11th Cir.2004) | 36 |
| * *United States v. Noe*, 821 F.2d 604 (11th Cir.1987) | 25, 26, 28 |
| * *United States v. Opdahl*, 930 F.2d 1530 (11th Cir.1991) | 32, 34, 35 |
| *United States v. Polar*, 369 F.3d 1248 (11th Cir.2004) | 29 |
| *United States v. Pollock*, 926 F.2d 1044 (11th Cir.1991) | 45 |
| *United States v. Reeves*, 742 F.3d 487 (11th Cir.2014) | 13 |
| *United States v. Rodriguez*, 935 F.2d 194 (11th Cir.1991) | 23 |
| * *United States v. Rodriguez*, 799 F.2d 649 (11th Cir.1986) | 25, 28 |
| *United States v. Ruiz*, 59 F.3d 1151 (11th Cir.1995) | 32, 35 |
| *United States v. Simtob*, 901 F.2d 799 (9th Cir.1990) | 46 |
| *United States v. Veltmann*, 6 F.3d 1483 (11th Cir.1993) | 29 |

TABLE OF CITATIONS—*CONTINUED*

**Cases**                                                                    **Page(s)**

*United States v. Walker*, 490 F.3d 1282 (11th Cir.2007) ...........................12, 20, 22

*United States v. Williams*, 816 F.2d 1527 (11th Cir.1987)...............................45, 46

*United States v. Woods,* 684 F.3d 1045 (11th Cir.2012) ........................................44

*United States v. Yost*, 479 F.3d 815 (11th Cir.2007) ..............................................50


**Statutes**

18 U.S.C. §924 .................................................................................................42, 43

18 U.S.C. §1030 .....................................................................................................38

18 U.S.C. §2422 ...............................................................................................*passim*

18 U.S.C. §3231 .......................................................................................................xi

18 U.S.C. §3742 .......................................................................................................xi

28 U.S.C. §1291 .......................................................................................................xi

28 U.S.C. §1294 .......................................................................................................xi

TABLE OF CITATIONS—*CONTINUED*

**Rules**                   **Page(s)**

F.R.E. 402 ...................................................................................41

F.R.E. 403 .............................................................................*passim*

F.R.E. 404 ................................................................3, 40, 47, 48

F.R.E. 412 ...................................................................................43

F.R.E. 413 ..............................................................................42, 43

F.R.E. 414 .............................................................................*passim*

F.R.E. 415 ...................................................................................42

F.R.Cr.P. 16............................................................................*passim*

**Other**

*Black's Law Dictionary* (6th ed. 1990)...................................42

*Webster's Third New International Dictionary* (1986) ....................................42, 43

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

This is a direct appeal from the final judgment in a criminal case, entered by the United States District Court, Middle District of Florida, Orlando Division, on June 30, 2016. Doc. 118.   The district court had original jurisdiction over this criminal case pursuant to 18 U.S.C. §3231.   Appellant George Adrien Brooks timely filed a notice of appeal on July 13, 2016. Doc. 120.   This Court has jurisdiction under 18 U.S.C. §3742 and 28 U.S.C. §§1291, 1294.

## STATEMENT OF THE ISSUES

I.  Whether the district court clearly erred in overruling Brooks' *Batson* objections where it failed to evaluate the government's stated reason, it injected its own race-based reason for upholding the strike, and the government's reason applied equally to non-stricken jurors.

II.  Whether the district court clearly erred by denying Brooks' motion for a mistrial where the government disclosed e-mails at trial that it previously represented were inaccessible.

III.  Whether the district court erred by denying Brooks' requested instruction on the definition of "induce" where the pattern instruction was incomplete and misleading, and Brooks' instruction was an accurate statement of the law.

IV.  Whether the district court erred by denying Brooks' theory of defense instruction.

V.  Whether the jury instructions constructively amended the indictment by including an additional means of interstate commerce not included in the indictment.

VI.  Whether the Gopoian evidence was erroneously admitted under F.R.E. 414 and 403 because 18 U.S.C. §2422(b) does not categorically qualify as a "child molestation" crime, and the testimony was unduly prejudicial.

1

VII.    Whether the district court abused its discretion when it admitted, as inextricably intertwined, Brooks' statements about his conversation with the father of a twelve-year-old boy.

VIII.   Whether the evidence was insufficient because it failed to show Brooks intended to cause or took a substantial step toward causing a minor's assent to sexual activity.

IX.     Whether the cumulative effect of the district court's errors deprived Brooks of a fair trial.

## STATEMENT OF THE CASE

### Course of Proceedings and Disposition in the Court Below

A jury convicted Brooks of attempting to entice a minor to engage in a sexual act, 18 U.S.C. §2422(b); he is serving his 18-year sentence.    Docs. 79, 118.

### Statement of Facts

#### 1.      Pretrial Motions/Objections

This case arose from emails Brooks exchanged with undercover FBI Agent Hyre.[1]  Pretrial, the government responded to Brooks' F.R.Cr.P. 16 discovery request, *see* Doc. 12, by disclosing copies of certain e-mails and the post-arrest consent form Brooks signed allowing the FBI to assume his online identity.   The consent form listed the usernames and passwords for Brooks' e-mail accounts and

---

[1] The emails are collected in Exhibit 3.

2

stated:

> I understand and acknowledge that by signing the consent form, I relinquish all present and future claims to the use of the accounts (or my child's).   I understand that the FBI will change the password(s) to the account so that I will no longer have access.

Doc. 98 at 104–05.

The government also gave notice of its intent to introduce, under Rules 414 and 404(b), F.R.E., Brooks' statements to Hyre about conversing with the father of a 12-year-old four years prior.   Doc. 29.   The district court denied Brooks' motion in limine to preclude admission of those statements, ruling they were inextricably intertwined with the offense. Docs. 134; 136 at 45–50.

Ten days before trial, the government learned Brooks allegedly molested his seven-year-old nephew, John Gopoian, 44 years earlier.   Doc. 49. The government sought to call Gopoian at trial under Rules 414 or 404(b).   Brooks objected, arguing the disclosure was untimely and the testimony would be severely prejudicial as the trial would devolve into a mini-trial about the alleged acts.   The court overruled Brooks' objections.   Docs. 49, 53, 136 at 135–36.

Brooks renewed his objections before voir dire, arguing the testimony was inadmissible under Rules 414 and 403 because §2422(b) does not qualify as a "child molestation" offense, and the testimony's prejudicial effect substantially outweighed its probative value.   The government responded that §2422(b) is a "child molestation" offense because that term includes attempts to create contact

between a person's body and a child's mouth or anus, and the testimony was probative of Brooks' intent.   The court ruled the testimony was admissible under Rule 414.   Brooks maintained his objections.   Docs. 67; 97 at 16–25; 98 at 3–5.

### 2.    Jury Selection

Based on Brooks' *Batson* objections, the court directed the government to state its reasons for exercising preemptory challenges on Indian-American Venireman Ramchandran and Hispanic Venireman Aviles. The government stated it struck Ramchandran based on "the answers that he gave regarding his background," not his race.  Doc. 97 at 178-80.  When asked what about his background was concerning, the government stated, "Well . . . he had heard something about a similar case.   I know the Court inquired whether he could be fair and impartial," but then stated "[i]t was just based on his demeanor as to the responses that he provided . . . but nothing other than that."   *Id.*   Brooks responded, "I don't think demeanor is enough," and if the government was concerned about Ramchandran's demeanor, it could have asked the district court to "bring him up sidebar and inquire about his demeanor."   *Id.*    The district court overruled Brooks objection, stating:

> I do recall when asked if he's heard anything about this case, he answered in the affirmative and then he indicated that he was mistaken. He didn't know anything about this case, but he knew cases like this.   I asked him if that would interfere.   He said no.
>
> I don't think there's a racial component in this involved.   I've seen no

4

pattern alleged by the government to exclude anyone of any particular group.…I'm going to allow the preemptory over the objection. However, I will reconsider it if there's a pattern that arises that defense counsel wants to point to; but I think she's given a sufficient non-racial reason.

*Id.*

The government stated it used its last strike against Aviles because it lacked "sufficient information about [Aviles'] background."  *Id.* at 183-87. Brooks argued the government's response was not race-neutral; Aviles provided sufficient background information; and the government could have asked the court to inquire further if wanted more information. The government replied that enough questions were asked, but Aviles is "an empty pallet."  The district court overruled Brooks' objection, stating:

I'm going to go on ahead and point to the elephant in the room.  I understand and respect the defense's objection here, but I'm to believe that an Hispanic prosecutor is discriminating against a potential Hispanic juror in a case that involves a Caucasian defendant.  I'm having trouble with that premise.

And I have to keep it – she doesn't know anything about him.  He's a letter carrier with no life experience, is what she's saying, and that makes her uncomfortable.  I think that's a non-racial-neutral reason; and for that reason and based on the entire context I've just described, the government has just used their last preemptory.

*Id.*

Brooks' jury included no Indian-American or Hispanic male. *Id.* at 205. Of the 13 jurors selected, which included two African-American males and two

5

Hispanic females, at least six—Bryan, West, Hinton, Aybar, LaFalaise, and Soderholm—answered the voir dire questions substantially similar to Ramchandran and Aviles. *Id.* at 63–135.

### 3.    Trial Testimony

At trial, Hyre testified about his communications with Brooks, which began when Hyre responded to an advertisement Brooks posted online. Exh-1; Docs. 98 at 28–110, 99 at 16–126. Titled: "Family Play Time - [man for man] (Orlando)," the advertisement said:

> I know there are families out there (fathers/sons/uncles/nephews/ cousins) that play together. I would like to be part of your family and enjoy the closeness you enjoy as a family. I could be your long lost uncle. If you are all 18 or older, then get back to me if interested. - do NOT contact me with unsolicited services or offers.

Doc. 98 at 40–41. Hyre emailed Brooks that he had a 10-year-old son and 13-year-old daughter; they were "very close" and enjoyed meeting new friends, and Brooks should contact him if interested. *Id.* at 36, 44.[2] Brooks responded he was "always UP for new adventures"; Hyre replied: "Us too. Could be lots of fun, seeing new things." *Id.* at 46, 48. Brooks asked Hyre what he did for fun. Hyre said, "play with my kids :) what about you." *Id.* at 54–56. Brooks asked what Hyre played; Hyre stated, "We make each other happy. Is this something you're interested in or are [you] just [role playing]? I need to know one way or the other.

---

[2] These children are fictitious.

It's cool.   Definitely not for everyone."   *Id.*   Brooks said he was interested.   *Id.*

When Hyre asked what Brooks wanted to do, Brooks responded he "would love to come over and hang out with you and get to know you all."   *Id.*   Hyre asked if he was interested in one or both children; Brooks replied he would be most comfortable with only the son initially.   Hyre again asked what Brooks wanted to do.   Unsure, Brooks asked Hyre to establish "the limits" by explaining what he did.   *Id.* at 58–59.   Hyre explained he was "careful, very loving, no rough stuff"; his son "loves to please and [Hyre] love[s] to watch."   *Id.* at 59.   He asked Brooks again what he wanted to do.   Brooks replied: "Just be loving as well and definitely nothing rough.   I would be into playing with you and if you let him watch that would be cool."   *Id.*   Hyre said he only liked children, not adult males, and had responded to Brooks' posting because he "love[d] to watch [his children] with others."   *Id.*   Brooks replied, "That's cool, as long as you're cool with it and this is not a police sting."   *Id.* at 60.   Hyre denied he was law enforcement.   In response to whether he had watched the children play with other men, Hyre said he watched his daughter play with men several times and his son twice.   Brooks and Hyre discussed meeting two days later.   *Id.* at 61–64.

That day, Hyre reinitiated contact, asking if Brooks was still interested.   Brooks responded, "Would like to come over and see how things go, hopefully feel comfortable."   *Id.* at 65–66.   Saying "[i]t can be a ton of fun, but only if all

7

consensual," Hyre suggested they discuss their expectations on the telephone, adding that he had been "very clear about our lifestyle and what we enjoy" and did not "want any misunderstandings."    *Id.* at 65–67.

During the telephone conversation, Hyre said he had "done everything" with his son and inquired about Brooks' experience.    Exh-5 at 1–2.    Brooks said "this is the first time I've ever done anything like this."    *Id.* at 1–3.    Although he had responded to an advertisement by a man with a twelve-year-old son, Brooks "never heard back from him … It just never went anywhere."    *Id.* at 4–5; Doc. 98 at 102–04.

After the call, Brooks e-mailed Hyre that he was uncircumcised but kept "it" clean and planned to groom his pubic and chest hair unless Hyre preferred otherwise.    Doc. 98 at 84–89.    Hyre suggested Brooks groom himself, stating his children had never seen an uncircumcised penis.    Hyre added that their telephone conversation excited him and he had "some special times" with both children.    *Id.* When asked what he had done, Hyre explained, "Oral on her and…light anal on him."    *Id.*    Hyre claimed his son "loves to please" and caused him to ejaculate.    *Id.* Hyre reassured Brooks he was not an undercover officer when Brooks expressed concern.    *Id.*    The next day, Hyre emphasized "it's consensual" and reiterated his son "gets pleasure out of it, and I'm his dad and it's good with me."    *Id.*    They met later that day, and Brooks was arrested.    *Id.* at 95–96.

8

Toward the end of cross-examination, Hyre stated that, in e-mails not disclosed to the defense, Brooks had contacted individuals about sex with children. Doc. 99 at 87–88.   The government then provided Brooks and the court with copies of the e-mails, and Brooks moved for a mistrial, arguing the government violated Rule 16(a)(1)(e)(iii).   Although it had not given Brooks those emails, the government responded that the defense could have found them in Brooks' email accounts.   Unbeknownst to Brooks, the FBI never changed Brooks' passwords after he was told they were being changed.   The court found no Rule 16 violation and denied Brooks' motion for a mistrial. Declining Brooks' proposed limiting instruction, the court crafted its own instruction, but suggested it would be more harmful than helpful.   Brooks objected, and the instruction was not given.   *Id.* at 88–109.

Over Brooks' repeated objections, Gopoian testified that 44 years ago, when he was six or seven years old, he showered with Brooks and on a few occasions he awoke to Brooks performing oral sex on him.   He recalled the last occasion, when he fell to the floor after pushing Brooks off of him.   He told his mother about the incident, but never reported it to law enforcement.   Aside from the oral sex, pushing Brooks away, and the bed's positioning in the room, Gopoian had no recollection of the events.   He thought about reporting the incident to law enforcement as an adult,

but never did.  *Id.* at 156–71, 181-82, 203–04.   Brooks moved to strike Gopoian's

testimony, which the court denied.   Docs. 74, 76, 99 at 219–22.[3]

### 4.    Motions for Judgment of Acquittal

Brooks moved for judgment of acquittal, arguing the evidence showed he

wanted to have sex with Hyre's fictitious minor, but he had neither intentionally or

knowingly persuaded, induced, or enticed a minor to engage in sexual activity, nor

taken any substantial step toward that act.   The court denied the motion.   Docs. 69

at 13–15, 99 at 204–19.

### 5.    Jury Instructions and Closing Arguments

Brooks was charged with violating §2422(b) by using facilities and means of

interstate commerce, that is, "the Internet and a computer."   Doc. 9.   The

government requested the jury instructions define "computer" to include a cell

phone used to make calls and send text messages.   Brooks insisted the jury

instructions track the language of the indictment, which limited the facilities of

interstate commerce to the Internet and a computer.   The government's request,

Brooks asserted, would constructively amend the indictment by broadening the

possible bases for a conviction.   The government argued a cell phone is a computer,

so including the term "cell phone" would not expand the indictment.   Rather than

define "computer," the court added "cell phone" as a facility of interstate commerce

---

[3] The district court gave a limiting instruction regarding Gopoian's testimony.
Doc. 78 at 10.

in the instructions.    Docs. 78 at 12–13, 99 at 235–65, 100 at 11–14.

Brooks also requested a modification to the definition of "induce."    Doc. 99 at 265–70.    The court's instruction mirrored the pattern instruction, defining "induce" as "to stimulate the occurrence of or to cause."    *Id.*    Brooks argued the definition was incomplete, misleading, and should read "to stimulate the occurrence of or to cause the assent of a minor to engage in unlawful sexual activity."    *Id.* "It's consistent with the Eleventh Circuit case law," he argued, "and it's critical to our case."    Doc. 100 at 10.    The district court stated Brooks' request was not "legally flawed," but kept the pattern instruction to avoid confusing the jury.    *Id.* at 23.    Brooks objected.    *Id.*

Brooks also requested an instruction on his theory of defense—that he did not attempt to change the mental state of a minor.    Doc. 99 at 288–99.    He explained the difference between changing a minor's mental state and causing a minor to engage in sexual activity was subtle, was "the crux of our defense," and would aid the jury in evaluating whether he committed the offense.    *Id.*; Doc. 100 at 1. Relying on *United States v. Alvarado*, 808 F.3d 474 (11th Cir.2015), the government argued Brooks was not entitled to the instruction.    *Id.* at 5–7.    The court agreed, denying the request because Brooks presented no evidence supporting the instruction.    Docs. 99 at 293, 100 at 21.    Brooks objected to the jury instructions that were contrary to his requests.    Doc. 100 at 19.

11

During closing argument, the government argued this case meets the definition of "inducement" because Brooks "attempted to stimulate or cause a minor *to engage in sexual activity*." *Id.* at 50; *see id.* at 53 (stating that Brooks used Hyre's sexual deviance "*to engage them in sexual activity.*") (emphasis added). The government also argued Brooks used a means of interstate commerce because "he used a cell phone." *Id.* at 53–54. The government concluded the jury should convict Brooks because he "was willing to meet a child…for sex; and that is the crime [he] has committed." *Id.* at 58–59.

Brooks' renewed motion for judgment of acquittal, evidentiary objections, and jury-instruction objections were denied, and he was found guilty. *Id.* at 90–96.

### Standards of Review

I.    The district court's determination about the actual motivation behind each challenged strike is reviewed for clear error. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008); *United States v. Walker*, 490 F.3d 1282, 1291 (11th Cir.2007).

II.    Motions for mistrials and Rule 16 discovery violations are reviewed for abuse of discretion. *United States v. Chavez*, 584 F.3d 1354, 1362 (11th Cir.2009).

III.    Jury instructions are reviewed de novo "to determine whether they misstate the law or mislead the jury to the objecting party's prejudice." *United States v. Gomez,* 580 F.3d 1229, 1233 (11th Cir.2009). Failing to properly instruct the

jury on an essential element of an offense is reviewed for harmless error, which focuses on whether the "verdict would have been the same absent the error or whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *United States v. Browne*, 505 F.3d 1229, 1267–68 (11th Cir.2007)(quoting *Neder v. United States,* 527 U.S. 1, 17, 19 (1999))(internal quotation marks omitted).

IV.    Refusal to instruct the jury on the theory of the defense is reviewed for abuse of discretion. *United States v. Morris*, 20 F.3d 1111, 1114–15 (11th Cir.1994).

V.    Whether a jury instruction constructively amended the indictment is reviewed de novo. *United States v. Gutierrez*, 745 F.3d 463, 473 (11th Cir.2014).

VI.    The district court's interpretation of the Federal Rules of Evidence is reviewed de novo, and its admission of evidence for an abuse of discretion. *Doe No. 1 v. United States*, 749 F.3d 999, 1003 (11th Cir.2014); *United States v. Reeves*, 742 F.3d 487, 501 (11th Cir.2014); *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir.2004) (en banc). The government bears the burden to show that the erroneous evidentiary ruling was not harmless, i.e., if, given the record as a whole, the error may have substantially influenced the outcome of the proceeding. *United States v. Bradley*, 644 F.3d 1213, 1270 (11th Cir.2011); *United States v. Gamory*, 635 F.3d 480, 492 (11th Cir.2011).

**VII.** The same standard applies to issues VI and VII.

**VIII.** This Court reviews de novo the denial of a motion for judgment of acquittal and the sufficiency of the evidence to sustain a conviction, viewing the evidence in the light most favorable to the government and drawing "all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Evans*, 344 F.3d 1131, 1134 (11th Cir.2003).

**IX.** This Court will reverse a conviction if the cumulative effect of errors is prejudicial, even if the prejudice caused by each individual error was harmless. *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir.2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 812 (2006).

S<small>UMMARY OF</small> A<small>RGUMENTS</small>

**I.** The district court erred in overruling Brooks' two *Batson* objections. Regarding the first *Batson* objection, the district court failed to evaluate the government's stated reason for the strike and erroneously found that Brooks failed to show a "pattern" of discrimination. And the government's proffered reason for the strike was neither genuine nor sufficiently specific. Regarding the second *Batson* objection, the district court's independently injected race-neutral reason—that a Hispanic prosecutor likely would not strike a Hispanic juror against a Caucasian defendant—is both procedurally and substantively erroneous. And the government's stated reason for the

14

strike was pretextual as the reason for the strike applied with equal force to other jurors who were not stricken.

II.    Brooks' motion for a mistrial based on the government's Rule 16 violation was erroneously denied.   Upon his arrest, Brooks completed a consent form providing the FBI with the passwords to his e-mail accounts and acknowledging that the FBI would be changing the passwords so Brooks could no longer access the accounts.   During trial, testimony was elicited about e-mails from these accounts, and the government argued it made the e-mails available by turning over Brooks' signed consent form in discovery. The government's actions undermine Rule 16's fundamental purpose—to ensure a fair trial—and substantially prejudiced Brooks' defense.

III.    The district court erred by refusing to give Brooks' requested jury instruction on the definition of "inducement" under §2422(b).   In *Lee*, this Court clarified that §2422(b) criminalizes an intent to cause a minor's assent, not an intent to engage in sexual activity.   Consistent with *Lee*, Brooks requested that the definition of "inducement" in the pattern jury instructions be changed from "to stimulate the occurrence of or to cause" to "to stimulate the occurrence of or to cause *the assent of a minor to engage in unlawful sexual activity*."   The district court's rigid adherence to the pattern instruction

15

created the possibility that Brooks was convicted for attempting to engage in sexual activity, a crime with which he was never charged.

IV.   The district court abused its discretion by not giving Brooks' requested instruction on his theory of the defense—that he did not intend to cause a minor to assent to sexual activity.  The district court erroneously believed Brooks was required to independently put on evidence to warrant the instruction.   Contrary to the district court's belief, Brooks' met the "extremely low" burden for the instruction because, looking at the evidence in the light most favorable to Brooks, a jury could rationally find he did not intend to cause the assent of a minor.

V.   The direct court constructively amended the indictment when it included Brooks' "cell phone" as an additional means of interstate commerce.  The only means of interstate commerce charged in the Indictment were the internet and a computer.   Including Brooks' cell phone as a means of interstate commerce allowed the jury to convict Brooks based *solely* on his phone call with Hyre, effectively expanding the grand jury's charge.

VI.   The district court abused its discretion when it admitted the testimony of Gopoian under Rule 414. First, Rule 414 is inapplicable because §2422(b) is not a "child molestation" offense.   The text and structure of Rule 414 requires courts to use a categorical approach when assessing whether a

16

charged offense is a "child molestation" offense. Section 2422(b) does not qualify as a child molestation offense under Rule 414(d) because it is not a listed federal offense, nor does it have as an element the requirement that a defendant attempt or conspire to engage in sexual activity with a minor; it requires only that a defendant intend to change the mental state of a minor, which does not come within the definition.

Even if that the evidence were admissible under Rule 414, it nevertheless should have been excluded under Rule 403. Gopoian's allegations occurred 44 years, when Gopoian was seven years old. There is no independent evidence to corroborate his allegations. Further, given the late disclosure, the prosecutor clearly did not need the evidence to proceed to trial. Also, the alleged acts concerning Gopoian were extremely inflammatory given the serious stigma associated with incest. There is a significant possibility that, given the nature of the allegations, the jury emotionally reacted to the testimony instead of focusing on the charged offense. Taking these factors together, Gopoian's testimony was extremely prejudicial to Brooks and should have been excluded under Rule 403.

**VII.** The district court also abused its discretion when it admitted Brooks' statements about responding to a Craigslist advertisement posted by the father of a 12-year-old, four years prior to the instant offense, as inextricably

17

intertwined.   The statements were neither an "integral" or "natural" part of the account of the crime.   They only came to light because of Hyre's fishing for inculpatory statements.   They have nothing to do with the instant offense, are not vital to an understanding of the case, and could have been easily redacted.   The admission of the statements was also unduly prejudicial under Rule 403.   The statements lack significant probative value as they do not show Brooks attempted to change a minor's mental state.   They were, however, extremely prejudicial as a jury may have convicted Brooks based on its belief that Brooks wanted to engage in sex with a minor, an offense not criminalized under §2422(b).

**VIII.** The evidence was insufficient to establish Brooks attempted to cause the assent of a minor to have sex.   At best, the evidence showed Brooks attempted to have sex with a minor, which is not criminalized under §2422(b).

**IX.** The cumulative effect of these errors affected Brooks' substantial rights and denied him a fair trial.

**ARGUMENTS AND CITATIONS OF AUTHORITY**

I.    **The district court clearly erred in overruling Brooks' *Batson*
      objections where it failed to evaluate the government's stated reason,
      it injected its own race-based reason for upholding the strike, and the
      government's reason applied equally to non-stricken jurors.**

Even a single peremptory strike resulting from discriminatory intent violates

the Equal Protection Clause.   *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008);

*Batson v. Kentucky*, 476 U.S. 79, 89 (1986).   The test for a resolving a *Batson*

objection is:

> First, a defendant must make a prima facie showing that a peremptory
> challenge has been exercised on the basis of race; second, if that
> showing has been made, the prosecution must offer a race-neutral basis
> for striking the juror in question; and third, in light of the parties'
> submissions, the trial court must determine whether the defendant has
> shown purposeful discrimination.

*Snyder*, 552 U.S. at 476–477 (internal quotation marks and alterations omitted);

*United States v. Campa*, 529 F.3d 980, 998 (11th Cir.2008).

Here, Brooks objected; the government proffered its reasons for striking two

venirepersons; and the trial court overruled Brooks' objections. The question on

appeal, thus, is whether the district court erred in ruling the government's stated

reasons were not pretextual.

In determining whether a strike is pretextual, the focus is on the

*genuineness* of the prosecutor's proffered reason based on all relevant facts,

including whether the government's reason for a strike applies with equal force to

19

"otherwise-similar" venire members of another race who were not challenged, the prosecutor's demeanor, the reasonableness or improbability of the proffered reason, and whether the proffered reason has "some basis in accepted trial strategy." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005); *Madison v. Comm'r, Alabama DOC*, 761 F.3d 1240, 1251 (11th Cir.2014); *Walker,* 490 F.3d at 1294; *United States v. Houston*, 456 F.3d 1328, 1338 (11th Cir.2006).

A prosecutor's credibility is judged based on the prosecutor's stated reason for the strike. *Parker v. Allen*, 565 F.3d 1258, 1271 (11th Cir.2009). As the Supreme Court explained:

> [W]hen illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false. . . .

*Miller-El*, 545 U.S. at 251–52 (internal citations omitted).

The prosecutor must give a clear and reasonably specific explanation of legitimate reasons for exercising the challenge; failing to do so indicates that the strike was discriminatory. A prosecutor's vague explanations, denials of a discriminatory motive, and affirmations of good faith are insufficient. *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1255 (11th Cir.2013); *McGahee v. Alabama DOC*, 560 F.3d 1252, 1269–70 (11th Cir.2009); *Bui v. Haley*, 321 F.3d 1304, 1316

20

(11th Cir.2003); *United States v. Horsley*, 864 F.2d 1543, 1546 (11th Cir.1989).

Here, the prosecutor struck two venirepersons—Ramchandran and Aviles, Doc. 97 at 178–80. The prosecutor gave three different reasons for striking Ramchandran, but ultimately stated it was based solely on "his demeanor as to the responses that he provided . . . *nothing other than that*." Doc. 97 at 178–80 (emphasis added).[4]  Rather than evaluating the government's sole reason for the strike, the district court overruled Brooks' objection, reiterating its exchange with Ramachandran about his mistaken answer, and stating the government had not engaged in a pattern of discrimination.  *Id.*

The court's failure to evaluate the government's sole justification for the strike is clear error.  *See Snyder*, 552 U.S. at 483–85 (finding a *Batson* violation where the trial court failed to rule on the prosecutor's demeanor-based justification for a strike); *Miller-El*, 545 U.S. at 251–52; *Parker*, 565 F.3d at 1271; *Houston*, 456 F.3d at 1335. Likewise, the district court's focus on whether a pattern of discrimination had been established is erroneous as a matter of law.  Even a single instance of discrimination can constitute a *Batson* violation.  *Snyder,* 552 U.S. at 478.

Had the district court properly evaluated the prosecutor's proffered

---

[4]  Initially, the government stated the strike was based on Ramachandran's background.  Then, it expressed concern about Ramachandran's mistaken answer to the court's inquiry regarding whether he previously heard about Brooks' case. The prosecutor also denied a discriminatory motive.  *Id*.

justification, it would have found it was pretextual.  Although a demeanor-based justification may be reasonable, the question is not whether the justification is reasonable, but whether, under the circumstances, the proffered justification is *genuine*.  *Walker,* 490 F.3d at 1294.  The government's ambivalent meandering indicates its response attempted to proffer a pretextual reason that would pass muster rather than a genuinely race-neutral reason.

The government's failure to clearly specify how Ramachandran's demeanor was concerning further indicates its stated justification was pretextual.  *Horsley*, 864 F.2d at 1546; *Adkins*, 710 F.3d at 1255 ("The absence of a legitimate reason indicates [the juror] was removed because of his race."); *McGahee*, 560 F.3d at 1269–70.  Accordingly, the district court committed clear error in overruling Brooks' *Batson* objection regarding Ramachandran.

Regarding Aviles, the government claimed it lacked sufficient information about his background.  The district court accepted that reason and stated it was having trouble believing a "Hispanic prosecutor is discriminating against a potential Hispanic juror in a case that involves a Caucasian defendant." Doc. 97 at 183–87.

The district court clearly erred by basing its decision, in part, on its own racial reasoning.  The district court must evaluate only the reasons provided by the prosecutor, not its own thoughts about the prosecutor's race.  *Miller-El*, 545 U.S. at 251–52.  The district court's stereotype-based reasoning is also substantively

22

invalid.   A valid *Batson* objection may be made regardless of whether a defendant (or prosecutor) shares the same race as the excluded juror.   *Powers v. Ohio*, 499 U.S. 400 (1991); *J.E.B. v. Alabama*, 511 U.S. 127, 138–39 (1994); *United States v. Rodriguez*, 935 F.2d 194 (11th Cir.1991); *Trawick v. Allen*, 520 F.3d 1264, 1267 n.4 (11th Cir.2008).

The district court compounded its error by accepting the government's proffered reason, i.e., a lack of information about Aviles, especially because the government did not strike six other jurors whose background information was substantially similar to Aviles.[5]   As the Supreme Court has recognized, where a prosecutor's proffered justification for a strike applies with equal force to otherwise similar jurors who were not stricken, it tends to prove that the prosecutor's stated reason was pretextual. *Miller-El,* 545 U.S. at 241.   Moreover, the government had an opportunity to request further questioning of the jury and declined to do so.   Doc. 97 at 183–87.   An attorney's credibility is called into question when he fails to engage in meaningful voir dire examination on a subject he allegedly is concerned about.   *Parker,* 565 F.3d at 1271.

Therefore, the district court clearly erred in overruling Brooks' *Batson*

---

[5] Each provided their occupation, marital status, and stated that they have no connections with law enforcement, never been the victim of a crime or accused of a crime, and never served on a jury. Although some jurors gave slightly different answers, the differences are not material.   *See Miller-El*, 545 U.S. at 247 n. 6 (stating that when comparing jurors, the jurors do not have to be "exactly identical" because "potential juror are not products of a set of cookie cutters.").

objections, and this case should be remanded for a new trial.

## II. The district court clearly erred by denying Brooks' motion for mistrial where the government disclosed e-mails at trial that it previously represented were inaccessible.

In response to Brooks' request for disclosure to the full extent permitted by Rule 16, the government disclosed a checklist of discoverable items, including certain e-mails extracted from Brooks' smartphone and a post-arrest consent form Brooks signed.   The form stated Brooks would no longer have access to his e-mail accounts because the FBI was changing the passwords.

At trial, the government disclosed others e-mails that were not part of its Rule 16 discovery package. The additional emails came from the accounts that were listed on the consent form, which stated Brooks could not access the accounts post-arrest because the FBI was changing the passwords.   In response to Brooks' motion for mistrial, the government stated—for the first time—that Brooks could have discovered the e-mails prior to trial because, contrary to what Brooks had been told, the agents did not actually change the passwords.

The district court ruled there was no Rule 16 violation.   The issue therefore is whether those e-mails had been *disclosed* simply because Brooks knew about the email accounts, even though he was told he could not access the accounts.

Under Rule 16(a)(1)(E)(iii), the government must, upon request, permit the defendant to inspect and copy papers and data within the government's possession,

custody, or control that were obtained from or belong to the defendant.[6]   The

government must disclose such items, regardless of whether it intends to use them at

trial.   *United States v. Rodriguez*, 799 F.2d 649, 652 (11th Cir.1986).   Reversal is

required if the violation of this rule prejudiced the defendant's substantial rights,

such as where the defendant is unduly surprised and lacks an adequate opportunity

to prepare a defense or the mistake substantially influences the jury.   *United States*

*v. Camargo-Vergara*, 57 F.3d 993, 998–99 (11th Cir.1995).   Where the defense's

strategy is undermined by the government's failure to disclose, a mistrial should be

granted.   *United States v. Noe*, 821 F.2d 604, 607 (11th Cir.1987); *Rodriguez*, 799

F.2d at 654.

For example, in *Rodriguez*, after the defendant testified he did not maintain

contacts in Colombia, the government cross-examined him with names and

telephone numbers from his wallet.   799 F.2d at 651–54.   Neither the wallet nor its

contents were introduced into evidence.   "The damage, however, had been done."

*Id.*   This Court reversed and remanded, holding that a mistrial should have been

granted because the government's failure to disclose that information violated Rule

16 and substantially prejudiced the defendant.   *Id.* ("By failing to turn over for

discovery what it told the jury were his personal papers, the Government deprived

Rodriguez of any chance to meet that evidence.").

---

[6] The district court's scheduling order also imposed this obligation.   Doc. 12 at 2.

In *Noe*, agents testified that they had met with Noe several times in an undercover capacity about establishing a methamphetamine laboratory. 821 F.2d at 605–09. Noe testified that he had never spoken with the agents, denied involvement, and asserted an alibi defense. On rebuttal, the government confronted Noe with a previously-undisclosed tape recording undermining Noe's alibi defense. The district court overruled Noe's objection to admission of the tape. *Id.*

On appeal, the government argued that Noe was not substantially prejudiced because there was extensive evidence against him. This Court rejected that argument, noting that Rule 16 is designed to ensure a fair trial, and when failing to disclose undermines the foundation of the defense's strategy, a new trial should be held. This Court reasoned:

> Under the theory advanced by the government, the prosecution, by design or inadvertence, could withhold discoverable inculpatory evidence until the defendant asserted a defense strategy based on the apparent nonexistence of that evidence, thus foreclosing other, possibly viable, defense strategies. Unless a court concluded, based on all the evidence introduced, that the case against the defendant was "not strong," the discovery violation would be considered harmless. We refuse to adopt such a rule, for it would encourage precisely the "trial by ambush" that the Federal Rules of Criminal Procedure were designed to prevent.

*Id.*

In *Camargo-Vegara*, the government disclosed the defendant's post-arrest statement he "didn't want anything to with" the fake cocaine delivered to him. Based on that disclosure, the theory of defense was that the defendant had no

experience with cocaine. 557 F.3d at 995–99.  During the government's direct examination, an agent revealed for the first time that the defendant actually touched the cocaine and said it felt "strange."  *Id.*  A motion for mistrial based on the government's failure to disclose the statement under Rule 16 was denied.  *Id.*

This Court reversed, ruling that the agent's undisclosed testimony undermined the defense that the defendant had no experience with cocaine, and the government's failure to disclose the statement substantially prejudiced the defendant.  This Court rejected the government's argument that the defendant's attempted impeachment of the agent mitigated any prejudice, stating, "We cannot penalize [defendant] and reward the government for [defendant's] reasonable attempts to mitigate the government's breach of the discovery rules."  *Id.*

Here, Brooks' e-mails come within Rule 16(a)(1)(E)(iii) because they are papers or data in the government's possession, custody, or control.  The government argued that it complied with Rule 16 by providing Brooks with his signed consent form that listed the usernames and password of his e-mail accounts, and even though the consent form stated Brooks could no longer access the accounts, the passwords were never changed.

Rule 16 is designed to ensure a fair trial.  *Camargo-Vegara*, 57 F.3d at 999. Nothing is fair about the government misrepresenting the availability of discoverable e-mails, springing those e-mails on Brooks at trial, and then using

Brooks' reliance on its misrepresentation against him to argue it complied with Rule 16. Upholding the district court's finding would effectively allow the government "by design or inadvertence, [to] withhold discoverable inculpatory evidence until the defendant asserted a defense strategy based on the apparent nonexistence of that evidence, thus foreclosing other, possibly viable, defense strategies." *Noe*, 821 F.2d at 6089; *see also United States v. Martinez*, 763 F.2d 1297, 1315 (11th Cir.1985) (condemning the careless or intentional withholding of information sprung on a defendant at trial).

The government's Rule 16 violation substantially prejudiced Brooks' defense. Brooks was unduly surprised by the disclosure, which undermined his entrapment defense, particularly regarding the element of predisposition. *Camargo-Vergara*, 57 F.3d at 998–99. Indeed, the government had copies of the e-mails prepared for use as rebuttal evidence at trial. If Brooks was provided with these emails or made aware that he could access them, he could have changed his trial strategy. *Id.* However, once the jury heard about the e-mails, the "damage … had been done." *Rodriguez*, 799 F.3d at 653-54. The government's use of the e-mails "was just as effective as if it had been introduced in evidence," and by failing to disclose those e-mails prior to trial, the government deprived Brooks "of any chance to meet that evidence." *Id.*

The district court's offer of a limiting instruction, declined after the court

28

suggested it would be more damaging than curative, does not mitigate the substantial prejudice Brooks suffered.   As stated in *Camargo-Vergara*, this Court "cannot penalize [Brooks] and reward the government for [Brooks'] reasonable attempts to mitigate the government's breach of the discovery rules."   57 F.3d at 999. Accordingly, the government's Rule 16 violation substantially prejudiced Brooks' right to a fair trial, and this Court should remand for a new trial.

### III.   The district court erred by denying Brooks' requested instruction on the definition of "induce" where the pattern instruction was incomplete and misleading and Brooks' instruction was an accurate statement of the law.

While pattern jury instructions are a "valuable resource" to district court judges, rigid adherence to the pattern instructions is discouraged.   *See United States v. Dohan*, 508 F.3d 989, 994 (11th Cir.2007) (citing *United States v. Polar*, 369 F.3d 1248, 1252–53 (11th Cir.2004)); *United States v. Veltmann*, 6 F.3d 1483, 1492 (11th Cir.1993). Here, the district court's rigid adherence to the pattern instructions was error, specifically regarding Brooks' requested instruction on the definition of "inducement."   *See* Doc. 99 at 264–65.   The pattern instruction for §2422(b) defines "induce" as "to stimulate the occurrence of or to cause."   Doc. 78 at 13. Brooks argued that the instruction was incomplete and misleading in his case, and he requested that the definition be "to stimulate the occurrence of or to cause *the assent of a minor to engage in unlawful sexual activity*."   Doc. 99 at 267–68 ("[I]t's not just to cause anything under the sun.   This is a crime about causing the assent of a

29

minor to engage in unlawful sexual activity.  It's about … chang[ing] a mental state.").

The instruction given created the possibility that Brooks was convicted for attempting to engage in sexual activity with a minor—a crime he was never charged with.   Indeed, the prosecutor argued in closing that the jury should convict Brooks on that basis.   Doc. 100 at 49–50 ("This case falls squarely within the definition of inducement . . . . the evidence shows that the defendant attempted to stimulate or cause a minor to *engage in sexual activity*"); *id.* at 58–59 ("he was willing to meet … a child for sex; and that is the crime that this defendant has committed").

> In §2422(b) cases involving adult intermediaries, the government must prove:
>
> With regard to intent, the government must prove that the defendant intended to cause assent on the part of the minor, not that he "acted with the specific intent to engage in sexual activity."  With regard to conduct, the government must prove that the defendant took a substantial step toward causing assent, not toward causing actual sexual contact.  Section 2422(b) expressly proscribe[s] ... the persuasion, inducement, enticement, or coercion of [a] minor" to engage in illicit sexual activity, and not the sexual activity itself.   The statute criminalizes an intentional attempt to achieve a ***mental*** state—a minor's assent."

*United States v. Lee*, 603 F.3d 904, 914 (11th Cir.2010); *United States v. Hite*, 769 F.3d 1154, 1161 (D.C. Cir.2014) ("The ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that §2422(b) is intended to prohibit acts that seek to transform or overcome the will of a minor.").

30

Proof that Brooks attempted to engage in sexual activity with a minor is insufficient. Instead, the government was required to prove that Brooks attempted to cause a minor to assent to engage in sexual activity. Despite the requirement of assent only, other courts have confused the issue by focusing on the intent to engage in sexual contact, which is *not* an element of §2422(b). *See*, *e.g.*, *United States v. Farner*, 251 F.3d 510, 513 (5th Cir.2001); *United States v. Meek*, 366 F.3d 705, 718 (9th Cir.2004); *United States v. Hicks*, 457 F.3d 838, 840 (8th Cir.2006).

That these courts have confused the assent of a minor element underscores the importance of Brooks' requested instruction. As Brooks said, "[T]his is the crux of our defense . . . it's a subtle distinction . . . so subtle, that certain courts of appeal have confused this distinction. And if learned jurists are having trouble with this distinction a jury may as well." Doc. 100 at 3. Notwithstanding, the district court used the pattern instruction, which, as demonstrated by the prosecutor's closing arguments, allowed the jury to convict Brooks for a crime he was not charged with—attempting to engage in sexual activity with a minor.

Because the district court erred in instructing the jury about an essential element of the offense, the government must show that based on the record, no jury could rationally find Brooks lacked the intent to cause the assent of a minor. *See Neder*, 527 U.S. at 17, 19. The government cannot meet this burden. Even assuming Brooks desired to have sex with a minor, a jury could nevertheless listen to

31

Hyre and Brooks' conversations and rationally conclude that Brooks had no intent to "transform or overcome the will of a minor."  *Hite*, 769 F.3d at 1161.

Brooks posted an online advertisement seeking to engage in sexual activity *with adults*.  Doc. 98 at 40–41.  Hyre responded, indicating that he regularly engaged in sexual activity with his children and *the children enjoyed it*.  *Id.* at 44, 59, 66–67, 87, 89–90; Gov. Ex. 5 at 2; *see also* Doc. 98 at 89 ("[T]he thing to remember is that it's consensual.").  Hyre indicated that his fictitious son was excited upon hearing Brooks may be coming over.  *Id.* at 63–64.  Brooks stated that he only wanted to engage in sexual contact that the agent and his son would be comfortable with, and consistently asked their limits.  *Id.* at 58–59, 66; Gov. Ex. 5 at 6.  Given this evidence, a properly-instructed jury could rationally conclude that Brooks had no intent to convince a minor to engage in conduct the minor was not already willing to engage in.

## IV.    The district court erred by denying Brooks' theory of defense instruction.

A defendant has the right to have the jury instructed on the theory of defense, separate from instructions on the elements of the charged offense.  *United States v. Opdahl*, 930 F.2d 1530 (11th Cir.1991).  The threshold burden to obtain such an instruction is "extremely low," and in evaluating a defendant's request, the court must view the evidence in the light most favorable to the accused.  *United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir.1995).  A defendant is entitled to a theory of the

defense instruction if "there is *any foundation* in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Lively*, 803 F.2d 1124, 1126 (11th Cir.1986) (internal citations omitted). The refusal to give such an instruction is reversible error if the instruction was correct, not substantially covered by the court's charge to the jury, and about some point in the trial so important that failure to give the instruction seriously impaired the defendant's ability to conduct his defense. *Morris*, 20 F.3d at 1115–16.

Brooks requested a theory of the defense instruction stating that he should be acquitted if the jury found he did not intend to cause a minor to assent to sexual activity. Doc. 100 at 3–7. Relying on *Alvarado,* the district court denied the instruction because Brooks did not put on any evidence. *Id.* at 21.

The district court's reliance on *Alvarado* was misplaced. In *Alvarado*, the defendant, an undercover DEA agent, was indicted after he dealt drugs and weapons outside of his undercover capacity. He sought an innocent intent instruction and a public authority instruction. The district court gave an innocent intent instruction, but not a public authority instruction. 808 F.3d at 477–78.

Affirming, this Court distinguished between the requested instructions. A public authority instruction is an *affirmative defense* that although a defendant has violated the law, it was done in reasonable reliance on the authorization of a

33

government official. *Id.* at 484. To assert this *affirmative defense*, a defendant must produce evidence related to that defense. *Id.* at 489. An innocent intent theory, however, is a "defense strategy aimed at negating the mens rea for the crime." *Id.* at 486 (internal quotations omitted). This Court explained an innocent intent theory of defense may be available for a defendant "who failed to meet the standard for a public authority affirmative defense." *Id.* at 487. To obtain an innocent-intent instruction, "a defendant need only raise a reasonable doubt as to whether he possessed the necessary criminal intent." *Id.*

Brooks' requested theory of defense instruction is more akin to the innocent-intent instruction than an affirmative defense instruction. *Alvarado* does not require that a defendant proffer evidence to obtain an innocent-intent instruction like the one Brooks sought. In this respect, *Opdahl* is instructive.

In *Opdahl*, an agent posed as a corrupt IRS official offering to "get rid" of the defendant's tax liability. 930 F.2d at 1531–32. The defendant was charged with conspiring to bribe an IRS official. At trial, the agent testified about his interactions with the defendant. The district court denied the defendant's request for an instruction on his theory of the defense—that his payments were intended to be a legitimate settlement of his tax liability. *Id.* On appeal, this Court held that, based on solely the agent's testimony, the district court should have instructed the jury regarding the defendant's innocent-intent theory of defense. *Id.* at 1535. Thus,

*Opdahl* confirms that a defendant need not introduce evidence to obtain an innocent-intent theory of defense instruction.

Here, Brooks met his "extremely low" burden to obtain a theory of the defense instruction. *Ruiz*, 59 F.3d at 1154. The record is replete with statements by Hyre from which a jury could rationally conclude Brooks did not intend to cause the assent of a minor to engage in sexual activity. Looking at the evidence "in the light most favorable" to Brooks, there was a "foundation" for his requested instruction. *Id.* at 1154. And under the three-step inquiry set forth above, the district court abused its discretion in denying the instruction.

First, the requested instruction was a correct statement of the law given that §2422(b) criminalizes an attempt to change a minor's mental state. *See Lee*, 603 F.3d at 914. Second, the district court's other instructions did not cover Brooks' theory of the defense. Indeed, Brooks also asked that the definition of "induce" include language addressing the distinction discussed in *Lee*. That request was also denied. Thus, the instructions submitted to the jury did not address Brooks' defense. And third, failing to give Brooks' theory of defense instruction seriously impaired Brooks' dual defense he did not have the intent to commit the crime, and if he did, he was entrapped. By denying Brooks' requested instructions on the definition of "induce" and his theory of defense, the district court substantially impeded Brooks' ability to present his defense to the jury. Accordingly, the district

court abused its discretion in refusing to instruct about Brooks' theory of defense.

## V.   The jury instructions constructively amended the indictment by including an additional means of interstate commerce not included in the indictment.

A defendant has the right to be "tried on felony charges returned by a grand jury indictment and that only the grand jury may broaden the charges in the indictment once it has been returned."  *Stirone v. United States*, 361 U.S. 212, 215–16 (1960).  "[A] constructive amendment occurs when the indictment is broadened by instruction of the court."  *United States v. Narog*, 372 F.3d 1243, 1248 (11th Cir.2004).  When considering whether an indictment was constructively amended, this Court must "determine whether the prosecutor's actions or the court's instructions, viewed in context, resulted in the expansion of an indictment either literally or in effect."  *United States v. Behety*, 32 F.3d 503, 508–09 (11th Cir.1994) (internal quotation marks omitted).

The indictment charged Brooks with enticing a minor by "using facilities and means of interstate commerce, that is, the Internet and a computer . . ."  Doc. 9.  That charge implicated only Brooks' e-mails with Hyre.  It did not implicate Brooks' *phone call* with Hyre.

Over Brooks' objection, the district court instructed the jury that to convict, it must find "the Defendant used a computer, *cell phone*, or the Internet to [commit the offense]."  Doc. 78 at 12 (emphasis added); Doc. 100 at 37.  That instruction

allowed the jury to convict Brooks based *solely* on the phone conversation he had with Hyre, without reliance on the e-mails.   Therefore, a constructive amendment occurred because Brooks may have been convicted on a ground not charged in the indictment.

Given the evidence, the jury could have believed that the e-mails did not show Brooks intended to cause the assent of a minor to engage in sexual activity. Nevertheless, under the instructions given, the jury could have convicted Brooks based solely on his phone call with Hyre.   The court's instruction effectively expanded the charge in the indictment.

The government's arguments likewise expanded the indictment.   *Behety*, 3 F.3d at 508-09.   During opening statements, the government said the evidence would show Brooks used "the Internet and a cell phone.   Basically, cell phones are computers.   You'll be instructed to that effect, and those are means of communication in interstate commerce."   Doc. 98 at 9; *id.* at 13–14 (explaining that the phone call evidence would show "that he had the intent"); *id.* at 19–20 (calling a cell phone a means of interstate commerce Brooks used to commit the offense). During closing argument, the government stated that Brooks used a means of interstate commerce because "*he used [a] cell phone, which is a computer as defined by law; and that's basically the allegation in the Indictment* . . . . They were in communication through e-mail *and phone conversations*."   Doc. 100 at 53–54

37

(emphasis added).   Thus, the government's opening and closing invited the jury to convict Brooks based solely on his phone calls.   The result effectively expanded the charge made by the grand jury.

Brooks acknowledges that in *United States v. Mathis*, 767 F.3d 1264, 1283 (11th Cir.2014), this Court held that using a cell phone to call and send text messages is the use of a "computer" under 18 U.S.C. §1030(e)(1).   However, *Mathis* is not controlling here because this case does not concern the statutory definition of "computer" under §1030(e)(1).   Significantly, the *Mathis* Court relied almost exclusively on *United States v. Kramer*, 631 F.3d 900, 902–04 (8th Cir.2011), which stated a "basic" cell phone may not fit within the colloquial definition of a "computer."   *Id.*   ("We are bound, however, not by the common understanding of that word, but by the specific—if broad—definition set forth in §1030(e)(1).").

This appeal presents the issue left open by *Mathis* and *Kramer*—whether the ordinary and natural meaning of the term "computer" includes cell phones.   The term "computer" is susceptible to several flexible definitions, but in ordinary parlance, no one says "I'm going to make a call on my computer," or "I'm going to make a computer call"; they say "I'm going to make a phone call."   Indeed, the best evidence of this is that the district court felt the need to include "cell phones" as an additional means of interstate commerce in the jury instruction, separate from

"computers."   If the term "computer" captured telephone calls, including the term "cell phone" would have been redundant.   Thus, using a cell phone to make calls does not constitute using a computer, at least not under the ordinary and natural meaning of that term.

Taken together and separately, the prosecutor's arguments and the district court's instructions constructively amended the indictment. "A constructive amendment is reversible error … if the issue is properly preserved."   *United States v. Mozie*, 752 F.3d 1271, 1283 (11th Cir.2014).   Brooks preserved the issue.   Doc. 100 at 19, 90.   Consequently, Brooks' conviction should be reversed and a new trial ordered.

**VI.    The Gopoian evidence was erroneously admitted under Rules 414 and 403, F.R.E., because 18 U.S.C. §2422(b) does not categorically qualify as a "child molestation" crime, and the testimony was unduly prejudicial.**

Ten days before trial, the government disclosed its plan to introduce the testimony of Gopoian under Rule 414.   There were no documents or independent evidence corroborating Gopoian's account, only his memories of what happened 44 years ago, when he was seven years old.   The district court abused its discretion in admitting Gopoian's testimony under Rule 414 because attempted enticement under §2422(b) does not qualify as "child molestation" and the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

39

**A.    Attempted Enticement of a Minor under §2422(b) does not qualify as a "child molestation" crime under Rule 414.**

Generally, propensity evidence is inadmissible. *See* F.R.E. 404(b). However, an exception exists for "child molestation" cases under Rule 414. *See United States v. McGarity,* 669 F.3d 1218, 1243–44 (11th Cir.2012). That rule, in pertinent part, provides:

> **(a)    Permitted Uses.** In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.
>
> \* \* \*
>
> **(d)    Definition of "Child" and "Child Molestation."**    In this rule and Rule 415:
>
> **(1)**    "child" means a person below the age of 14; and
>
> **(2)**    "child molestation" means a crime under federal law or under state law … involving:
>
> > **(A)**    any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;
> >
> > **(B)**    any conduct prohibited by 18 U.S.C. chapter 110;
> >
> > **(C)**    contact between any part of the defendant's body--or an object--and a child's genitals or anus;
> >
> > **(D)**    contact between the defendant's genitals or anus and any part of a child's body;
> >
> > **(E)**    deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or

40

> **(F)**    an attempt or conspiracy to engage in conduct
> described in subparagraphs (A)-(E).

F.R.E. 414(a), (d).

Thus, under Rule 414(a), prior acts of child molestation may be admitted if: (1) the defendant is on trial for a "child molestation" crime; and (2) the evidence is of another act of "child molestation."[7]   Here, the issue is whether the district court must use a categorical approach under step one when determining whether the defendant is on trial for a "child molestation" crime, and if so, whether attempted enticement under §2422(b) qualifies as a "child molestation" crime.   Attempted enticement under §2422(b) does not categorically qualify as a "child molestation" crime.

Whether Congress intended for a categorical approach focusing on the elements of a charged offense, or a circumstance-specific approach focusing on the defendant's alleged conduct, may be discerned from the text and structure of the Rule.   *Compare Taylor v. United States*, 495 U.S. 575, 600–602 (1990) (applying the categorical approach to the phase "any crime . . . that . . . is burglary" in the Armed Career Criminal Act (ACCA)), *with Nijhawan v. Holder*, 575 U.S. 29, 36 (2009) (applying a circumstance-specific approach to the phrase "fraud or deceit in which the loss to the victim or victims exceeds $10,000" in deportation statute).

---

[7] The evidence must also be relevant.   F.R.E. 402, 414(c).

The text of Rule 414 requires the use of a categorical approach when determining whether a defendant has been "accused" of a "crime" of "child molestation."

First, defining "child molestation" as "a crime" under federal or state law, suggests the use of a categorical approach.  Rule 414(d).  For example, the ACCA's "violent felony" definition refers to "crimes," such as "burglary, arson, or extortion" or those that "have as an element the use, attempted use, or threatened use of physical force."   18 U.S.C. §924(e)(2)(B).   And the district court must use the categorical approach when evaluating prior convictions under the ACCA.  *Taylor*, 495 U.S. at 600–602; *Nijhawan*, 557 U.S. at 33–34 (stating that "in ordinary speech" the word "crime" may suggest the use of a categorical approach).

Additionally, the term "accused" suggests that Congress intended the use of a categorical approach.   For example, the Seventh Circuit explained the word "accused" in Rule 413 is used in a technical sense to describe someone *charged* with a crime.[8]  *United States v. Courtright*, 632 F.3d 363, 368–69 (7th Cir.2011) (citing *Black's Law Dictionary* 22–23 (6th ed. 1990) and *Webster's Third New*

---

[8]  Rules 413, 414, and Rule 415 were enacted together in the Violent Crime Control and Law Enforcement Act of 1994.   *See United States v. Brimm*, 608 F.App'x 795, 798 n.2 (11th Cir.2015).

*International Dictionary* 14 (1986)).[9]

That Rule 414 defines "child molestation" as crimes "involving" certain "conduct" does not change the conclusion that district courts must use a categorical approach. Indeed, the ACCA's residual clause also included those terms, and the Supreme Court held that courts must use a categorical approach in determining whether prior convictions qualify as "violent felonies" under that clause. *See Nijhawan*, 557 U.S. at 36 ("While this language poses greater interpretive difficulty, the [Supreme] Court held that it too refers to crimes as generically defined.").[10] The definition's inclusion of specific statutory offenses also suggests that Congress intended courts to use a categorical approach. Rule 414(d)(2)(A)–(B) (referencing statutory offenses in Chapters 109A and 110 of Title 18).

Using a categorical approach, attempted enticement under §2422(b) does not qualify as a "child molestation" offense. First, if Congress wanted to include §2422(b) as a "child molestation" offense, it would have included Chapter 117 of

_____

[9] The *Courtright* Court found additional support for this conclusion in Rule 412, which permits the admission of a victim's sexual behavior by the accused in certain circumstances. 632 F.3d at 368–69. The Rule's committee notes specify that the term "accused" in that rule is meant in the broader, non-technical sense, meaning that a formal charge is not needed to invoke the Rule. *Id.* Rule 413 lacks a similar clarification, suggesting that Congress used the term "accused" there in the technical sense to describe someone *charged* with a crime. *Id.*

[10] The ACCA's residual clause covered "crimes" that "*involve conduct* [presenting] a serious potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B)(ii) (emphasis added). In *Johnson v. United States*, 135 S.Ct. 2551 (2015), the Supreme Court struck down the residual clause as unconstitutionally vague.

Title 18 in the definition as it did with Chapters 109A and 110. *See* F.R.E. 414(d)(2)(A)–(B). That alone strongly indicates that Congress did not intend for this offense to qualify as a "child molestation" offense. Moreover, §2422(b) does not qualify as a "child molestation" offense under Rule 414(d)(2)(C), (D), or (F), which refer to contact offenses (and attempts or conspiracies to commit such offenses). However, §2422(b) does not criminalize attempting to engage in sexual activity with a minor; it "criminalizes an intentional attempt to achieve a *mental state*—a minor's assent." *Lee*, 603 F.3d at 914.[11] Accordingly, attempted enticement under §2422(b) does not categorically qualify as a "child molestation" offense, and the district court erred as a matter of law by admitting Gopoian's testimony under Rule 414.

      **B.**    **The district court abused its discretion in admitting Gopoian's testimony because the probative value of the testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.**

"Rule 414 is not a blank check entitling the government to introduce whatever evidence it wishes, no matter how minimally relevant and potentially devastating to the defendant." *United States v. LeMay*, 260 F.3d 1018, 1022 (9th Cir.2001). Evidence admitted under Rule 414 is subject to Rule 403. *United States v. Woods,* 684 F.3d 1045, 1064 (11th Cir.2012); *McGarity*, 669 F.3d at 1244 n.32; F.R.E. 403

---

[11] Attempted enticement also does not qualify as a "child molestation" offense under Rule 414(d)(2)(E) because it does not require proof that a defendant desired to inflict pain on a child.

("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury")

Rule 403 requires balancing the probative value of a piece of evidence and its prejudicial effect. *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir.2003). Concerning extrinsic evidence, Rule 403 requires a common-sense assessment of the circumstances surrounding the offense, including the prosecutor's need for the evidence, and the similarity and temporal remoteness between the two acts. *McGarity,* 669 F.3d at 1244; *United States v. Jernigan*, 341 F.3d 1273, 1282 (11th Cir.2003). Extrinsic evidence must be excluded under Rule 403 if it is so heinous that it is likely to irrevocably sway the jury to a guilty verdict. *United States v. Williams*, 816 F.2d 1527, 1532 (11th Cir.1987). Additionally, "if the government can do without [the] evidence, fairness dictates that it should." *United States v. Pollock*, 926 F.2d 1044, 1049 (11th Cir.1991).

Here, the district court abused its discretion in admitting Gopoian's testimony. First, the government did not *need* Gopoian's testimony. Although it was not aware of Gopoian's existence until ten days before trial, it stated that it was ready to proceed to trial and prove its case prior to that time. *See e.g.*, Doc. 134 at 34–37. Additionally, the two acts are dissimilar. Gopoian's testimony was about his sexual activity with Brooks. This case, however, is about Brooks' attempt to change a minor's mental state, not whether he attempted to have sex with a minor.

45

Most significantly, these two acts are separated by almost half a century. *See United States v. Curley*, 639 F.3d 50, 59 (2d Cir.2011) ("The district court may exclude older acts if they have become 'too attenuated' to be relevant or too remote to render the witness's memory reliable."); *United States v. Simtob*, 901 F.2d 799 (9th Cir.1990) (stating that courts should be extremely cautious in admitting evidence of old acts). Gopoian's testimony was based solely on his memory of what occurred 44 years ago, when he was seven years old. No independent evidence corroborated his testimony.

Gopoian's testimony was also extremely inflammatory, especially because it involved "the separate and equally serious stigma associated with incest or the possibility that a jury might hear such allegations and decide to convict Defendant of completely unrelated offenses solely on the basis of that stigma." *United States v. Dickinson*, 16 F.Supp.3d 230, 235 (W.D.N.Y. 2014) (quoting *United States v. Bunty,* 617 F.Supp.2d 359, 376 (E.D.Pa. 2008)); *Williams*, 816 F.2d at 1532; *United States v. Fawbush,* 634 F.3d 420, 423 (8th Cir.2011) ("We believe the evidence that [the defendant] had sexually abused his daughters and had fathered a child with one of them to have been so inflammatory on its face as to divert the jury's attention from the material issues in the trial."). Indeed, there is a real possibility that the jury emotionally reacted to Gopoian's testimony and failed to focus on the underlying charge of attempted child *enticement*. Given the inflammatory nature of the

allegations, the prosecutor's lack of need for the testimony, the dissimilarity between the two acts, and the extreme lapse of time, the district court should have excluded Gopoian's testimony as unfairly prejudicial under Rule 403.

### VII. The district court abused its discretion when it admitted, as inextricably intertwined, Brooks' statements about his conversation with the father of a twelve-year-old boy.

Under Rule 404(b), extrinsic evidence of other crimes, wrongs, or acts is not admissible for propensity, but is admissible if relevant to issues other than the defendant's character, provided it satisfies the requirements of Rule 403. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir.2007). However, if evidence is inextricably intertwined with the charged offense, meaning it forms an *integral and natural* part of an account of a crime, it falls outside the scope of Rule 404(b). *Id.*

Here, the district court abused its discretion by admitting Brooks' statements about his conversation with the father of a 12-year-old boy four years prior to the instant offense as "inextricably intertwined to the [telephone] conversation." Doc. 98 at 102–04; Doc. 136 at 46. The government argued that Brooks' statement was "part of the natural flow of the case" and put his conversation with Hyre in context. Doc. 134 at 21. However, the statement was neither an "integral" nor "natural" part of the account of the crime.

First, the statement was not a "natural" part of the account of the crime. Hyre's persistent questions instigated the statement. *See* Gov. Ex. 5 at 1; Doc. 30-5

47

at 7.   Brooks' statement had nothing to do with the instant offense of attempted enticement.   The government should not be afforded a free pass around the rigors and limitations of Rule 404(b) by fishing for inculpatory statements during an investigation and then calling them "inextricably intertwined."

Also, the statement was not an "integral" part of the *account* of the crime.   It was not vital to understanding the case or providing context for the jury.   And just as the government redacted the references to Brooks' statement about the 16-year-old, it could have similarly redacted the statement about the father of the 12-year-old.

Finally, even if the statement were "inextricably intertwined," it was unduly prejudicial under Rule 403.   Indeed, "[t]he line between permissible evidence which is an inextricable part of a criminal transaction and unduly prejudicial evidence proscribed by F.R.E. 403 is thin."   *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir.1992)(internal quotation marks, brackets, and citations omitted). The admission of Brooks' statement crossed that line.   The statement only showed that four years prior to the instant offense, Brooks responded to an online ad posted by the father of a 12-year-old and the conversation went nowhere.   *Id.*   The statement does not show Brooks attempted to change the mental state of a minor, or even that he actually attempted to engage in sexual activity.   Thus, the statement had little if any probative value, especially given the substantial danger of unfair

prejudice, confusing the issues, and misleading the jury.   Indeed, the jury may have convicted Brooks based on its belief this evidence showed Brooks wanted to engage in sexual activity with a minor, which is not the offense he was charged with. Accordingly, the district court abused its discretion when it admitted evidence of Brooks' statement regarding his conversation with the father of a 12-year-old.

## VIII. The evidence was insufficient because it failed to show Brooks intended to cause or took a substantial step toward causing a minor's assent to sexual activity.

To convict Brooks of attempted enticement under §2422(b), the government had to prove Brooks specifically intended to persuade, induce, or entice a minor to engage in sexual activity, and he took a substantial step toward causing that assent. *Lee*, 603 F.3d at 914.   With or without the erroneously-admitted evidence discussed above, the government's evidence was insufficient to prove that Brooks intended to cause a minor to assent to sexual activity or took a substantial step toward the commission of the crime.

Hyre responded to Brooks' adult-only advertisement, indicating that he regularly engaged in sexual activity with his son, the son enjoyed it, and the son was excited that Brooks was coming over.   Doc. 98 at 44, 58–67, 87.   Brooks did not initiate contact with Hyre or the discussions about sex with minors, did not instruct Hyre to share information with or pass gifts to the minor, and did not suggest ways to put the minor at ease with engaging in sexual activity.   Brooks stressed that he was

49

only interested in sexual contact that both Hyre and his son would be comfortable with.  *See id.*; Exh-5 at 6.   Thus, taking the evidence in the light most favorable to the government, Brooks did not have the intent to "transform or overcome the will of a minor," or cause a minor to assent to sexual activity.  *Hite*, 769 F.3d at 1161; *Lee*, 603 F.3d at 914.

Regarding conduct, the government must prove that Brooks took a substantial step toward causing assent by the minor, not toward causing sexual contact.  *Lee*, 603 F.3d at 914.   "A substantial step can be shown when the defendant's objective acts mark his conduct as criminal and, as a whole, strongly corroborate the required culpability."   *United States v. Yost*, 479 F.3d 815, 819 (11th Cir.2007).   In determining whether Brooks took a substantial step, this Court looks at the totality of his conduct.   *Lee*, 603 F.3d at 916.

Brooks' conduct demonstrates that he took no substantial step toward changing a minor's mental state.   Brooks posted an adults-only advertisement, seeking to engage in sexual activity.   It was Hyre who responded and initiated discussions about sex with minors.   When Brooks suggested he was interested in engaging in sexual activity with Hyre only, Hyre rebuffed Brooks' advances and continued to steer the conversation toward discussions about sex with minors.   Doc. 98 at 59.   Although Brooks ultimately planned to engage in sexual activity with the child and traveled to meet Hyre, that does not show he took a substantial step toward

50

*changing a minor's mental state.*   Hyre repeatedly told Brooks he engaged in sexual activity with the child, and the child enjoyed it.   Brooks did nothing to suggest he wanted to create comfort, or put the child at ease with the idea because that was unnecessary.   There was no assent to cause.   Upon arrest, when Brooks was travelling to meet Hyre, he was not in possession of any items suggesting that he was intending to create comfort.   Thus, looking at the totality of Brooks' conduct, and taking the evidence in the light most favorable to the government, Brooks' actions do not corroborate the required culpability. At most, the evidence shows that Brooks attempted to have sex with a minor, which is not criminalized under §2422(b).   The district court therefore erred in denying Brooks' motion for a judgment of acquittal, and his conviction should be reversed.

## IX.    The cumulative effect of the district court's errors deprived Brooks of a fair trial.

Under the cumulative error doctrine, an aggregation of non-reversible errors can affect whether a defendant received a fundamentally fair trial.   *United States v. Ladson*, 643 F.3d 1335, 1342 (11th Cir.2011); *United States v. Hands*, 184 F.3d 1322 (11th Cir.1999).   In evaluating Brooks' claim, this Court must examine the entire trial to determine whether it was fundamentally fair, and reverse if the combined errors affected Brooks' substantial rights.   *Ladson*, 643 F.3d at 1342.

The individual errors here were not harmless, but even assuming they were, the combined effect of these errors severely prejudiced Brooks, affecting his

51

substantial rights and denying him a fair trial.   *See Baker*, 432 F.3d at 1203 ("[T]he cumulative prejudicial effect of many errors may be greater than the sum of the prejudice caused by each individual error.").   There are numerous instances discussed above where the district court erred in admitting evidence and overruling objections.   The cumulative effect of these errors tainted the whole trial. Accordingly, Brooks respectfully requests this Court vacate his conviction and remand this case so he may receive a fundamentally fair trial.

### CONCLUSION

Brooks respectfully requests vacatur of his conviction.

Respectfully submitted,

Donna Lee Elm
Federal Defender

*/s/ Conrad Kahn*
Conrad Kahn
Research and Writing Attorney
Appellate Division
Florida Bar No. 104456
201 South Orange Avenue, Suite 301
Orlando, Florida 32801
Telephone: (407) 648-6338
E-mail: Conrad_Kahn@fd.org
Counsel for Brooks

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,409 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

**CERTIFICATE OF SERVICE**

I certify that on December 9, 2016, a copy of the foregoing brief was filed with the Clerk of the Court using the CM/ECF system, which will automatically send of this electronic filing to AUSA Peter Sholl.

*/s/ Conrad Kahn*
Conrad Kahn
Counsel for Brooks

53