No. 16-14959-AA

In the

# United States Court of Appeals
# for the Eleventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GEORGE BROOKS,

*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 6:15-CR-219-ORL-41TBS-1

## BRIEF OF THE UNITED STATES

W. STEPHEN MULDROW
Acting United States Attorney

YVETTE RHODES
Assistant United States Attorney
Appellate Division

PETER J. SHOLL
Assistant United States Attorney
Appellate Division
USA No. 082
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000

March 31, 2017

*United States v. George Brooks*
No. 16-14959-AA

## Certificate of Interested Persons
## and Corporate Disclosure Statement

In addition to the persons and entities identified in the Certificate of
Interested Persons and Corporate Disclosure Statement in George Brooks's
principal brief, the following persons have an interest in the outcome of this
case:

1.     Muldrow, W. Stephen, Acting United States Attorney; and

2.     Rhodes, Yvette, Assistant United States Attorney.

No publicly traded company or corporation has an interest in the
outcome of this appeal.

# Statement Regarding Oral Argument

The government does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement ......... C-1

Statement Regarding Oral Argument ................................................................. i

Table of Contents ............................................................................................... ii

Table of Citations .............................................................................................. iv

Statement of Jurisdiction .................................................................................. ix

Statement of the Issues ...................................................................................... 1

Statement of the Case ........................................................................................ 1

    *Course of Proceedings* ................................................................................. 2

    *Statement of the Facts* ................................................................................ 4

    A.    The Evidence .................................................................................. 4

    B.    The Mistrial Motion ..................................................................... 13

    *Standard of Review* .................................................................................. 17

Summary of the Argument ............................................................................... 20

Argument and Citations of Authority ............................................................. 23

    I.    The district court correctly denied Brooks's motion for a judgment of acquittal. (Brooks's Issue VIII) ............................................. 23

    II.    The district court did not clearly err in finding that the prosecutor had not challenged two potential jurors based on their race. (Brooks's Issue I) ...................................................................... 29

III.   The district court did not abuse its discretion by admitting
       Gopoian's testimony and Brooks's statements about his
       communications with the father of a 12-year-old boy. (Brooks's
       Issues VI, VII)............................................................................ 35

       A.     Gopoian's Testimony ...................................................... 39

       B.     Brooks's Communications with the Father of a
              12-Year-Old   Boy ............................................................ 41

IV.    The district court did not abuse its discretion by denying
       Brooks's motion for a mistrial. (Brooks's Issue II)...................... 43

V.     The district court correctly instructed the jury. (Brooks's
       Issues III, IV, V) ........................................................................ 46

       A.     The district court did not constructively amend the
              indictment ...................................................................... 47

       B.     The district court correctly defined the term "induce." ...... 49

       C.     The district court did not abuse its discretion by denying
              Brooks's request for a theory-of-defense instruction
              regarding his claim that he had not attempted to change the
              mental state of a minor .................................................... 52

VI.    Brooks is not entitled to relief based on cumulative error.
       (Brooks's Issue IX).................................................................... 55

Conclusion.................................................................................. 56

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

iii

# Table of Citations

## Cases

*Batson v. Kentucky*,
  476 U.S. 79 (1986) ............................................................ *passim*

*Davis v. Ayala*,
  135 S. Ct. 2187 (2015) ................................................................ 30

*Greene v. Upton*,
  644 F.3d 1145 (11th Cir. 2011) ................................................. 33

*Lutwak v. U.S.*,
  344 U.S. 604 (1953) .................................................................. 43

*Miller-El v. Cockrell*,
  537 U.S. 322 (2003) .................................................................. 30

*Old Chief v. U.S.*,
  519 U.S. 172 (1997) ............................................................. 38, 39

*Sapuppo v. Allstate Floridian Ins. Co.*,
  739 F.3d 678 (11th Cir. 2014) .................................................. 28

*U.S. v. Alvarado*,
  808 F.3d 474 (11th Cir. 2015) .................................................. 54

*U.S. v. Breitweiser*,
  357 F.3d 1249 (11th Cir. 2004) ................................................. 41

*U.S. v. Brown*,
  441 F.3d 1330 (11th Cir. 2006) ................................................. 38

*U.S. v. Cochran*,
  534 F.3d 631 (7th Cir. 2008) .................................................... 23

*U.S. v. Dohan*,
  508 F.3d 989 (11th Cir. 2007) .................................................. 20

*U.S. v. Edouard*,
  485 F.3d 1324 (11th Cir. 2007) ................................................. 37

iv

*U.S. v. Evans*,
476 F.3d 1176 (11th Cir. 2007).............................................................47, 48

*\*U.S. v. Fallen*,
256 F.3d 1082 (11th Cir. 2001)...........................................................37, 38

*U.S. v. Foley*,
740 F.3d 1079 (7th Cir. 2014)................................................................. 41

*U.S. v. Fortenberry*,
971 F.2d 717 (11th Cir. 1992)................................................................ 38

*U.S. v. Gibson*,
708 F.3d 1256 (11th Cir. 2013)............................................................. 19

*\*U.S. v. Gomez*,
580 F.3d 1229 (11th Cir. 2009)............................................................. 47

*U.S. v. Gonzalez*,
834 F.3d 1206 (11th Cir. 2016).......................................................46, 47, 49

*U.S. v. Gunn*,
369 F.3d 1229 (11th Cir. 2004)............................................................. 18

*\*U.S. v. Gutierrez*,
745 F.3d 463 (11th Cir. 2014)............................................................19, 47

*U.S. v. Hawpetoss*,
478 F.3d 820 (7th Cir. 2007)..............................................................37, 41

*\*U.S. v. Hill*,
643 F.3d 807 (11th Cir. 2011)................................................................ 30

*U.S. v. Hite*,
769 F.3d 1154 (D.C. Cir. 2014) ..........................................................50, 51

*U.S. v. Howard*,
625 F. App'x 934 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 914 (2016).......... 27

*U.S. v. Kelly*,
510 F.3d 433 (4th Cir. 2007)..............................................................37, 39

*U.S. v. Larson*,
  112 F.3d 600 (2d Cir. 1997)............................................................. 37, 39, 41

*\*U.S. v. Lee*,
  603 F.3d 904 (11th Cir. 2010)........................................................ 24, 27, 50

*U.S. v. Levinson*,
  504 F. App'x 824 (11th Cir. 2013) .................................................. 36, 37, 39

*U.S. v. Mangaroo,*
  504 F.3d 1350 (11th Cir. 2007) ................................................................. 18

*U.S. v. Mathis*,
  767 F.3d 1264 (11th Cir. 2014), *abrogated on other grounds*, *U.S. v. Johnson*, No. 16-10599, 2017 WL 745597 (11th Cir. Feb. 27, 2017) ............ 48

*U.S. v. McGarity*,
  669 F.3d 1218 (11th Cir. 2012) ................................................................. 19

*\*U.S. v. Merrill*,
  513 F.3d 1293 (11th Cir. 2008) ................................................................. 18

*\*U.S. v. Murrell*,
  368 F.3d 1283 (11th Cir. 2004)........................................... 19, 24, 28, 29, 49

*\*U.S. v. Newsome*,
  475 F.3d 1221 (11th Cir. 2007)..................................................... 43, 44, 46

*U.S. v. Olano*,
  507 U.S. 725 (1993) ................................................................................. 49

*U.S. v. Opdahl*,
  930 F.2d 1530 (11th Cir. 1991)............................................................54, 55

*U.S. v. Paradies*,
  98 F.3d 1266 (11th Cir. 1996).................................................................. 18

*U.S. v. Pubien*,
  349 F. App'x 473 (11th Cir. 2009) .................................................. 18, 31, 33

*U.S. v. Richardson*,
  764 F.2d 1514 (11th Cir. 1985)................................................................ 37

*U.S. v. Robertson,
  736 F.3d 1317 (11th Cir. 2013) ........................................................ 18, 30, 33

*U.S. v. Seabrooks,
  839 F.3d 1326 (11th Cir. 2016), *petition for cert filed*, No. 16-8072
  (U.S. Feb. 16, 2017) ..........................................................................19, 46

U.S. v. Straub,
  508 F.3d 1003 (11th Cir. 2007) ............................................................... 18

U.S. v. Terzado-Madruga,
  897 F.2d 1099 (11th Cir. 1990) ............................................................... 38

*U.S. v. Votrobek,
  847 F.3d 1335 (11th Cir. 2017) ..........................................................19, 52

*U.S. v. Waldon,
  363 F.3d 1103 (11th Cir. 2004) ............................................................... 55

U.S. v. Walker,
  26 F.3d 108 (11th Cir. 1994) .................................................................. 55

U.S. v. Woods,
  684 F.3d 1045 (11th Cir. 2012) ............................................................... 37

U.S. v. Worsham,
  479 F. App'x 200 (11th Cir. 2012) .......................................................... 29

## Statutes

*18 U.S.C. § 2422(b) .......................................................................... *passim*

18 U.S.C. § 3231 ................................................................................. ix

28 U.S.C. § 1291 ................................................................................. ix

Fla. Stat. § 794.011 ............................................................................. 13

## Rules

Fed. R. App. P. 4(b) ............................................................................ ix

Fed. R. App. P. 28(a)(8) ....................................................................... 28

Fed. R. Crim. P. 16(a)(1)(E) ....................................................... 15

Fed. R. Crim. P. 17 ..................................................................... 44

*Fed. R. Crim. P. 52(a) ............................................... 19, 40, 43

*Fed. R. Evid. 103(a) ................................................... 19, 40, 43

Fed. R. Evid. 401 ........................................................................ 36

Fed. R. Evid. 402 ........................................................................ 36

Fed. R. Evid. 403 ...............................................................35, 37, 38

Fed. R. Evid. 404(b) ..............................................................36, 37

Fed. R. Evid. 404(b)(1) ............................................................... 36

Fed. R. Evid. 404(b)(2) .........................................................39, 42

Fed. R. Evid. 413 ........................................................................ 41

Fed. R. Evid. 414 ................................................................. *passim*

Fed. R. Evid. 414(a) .................................................................... 36

Fed. R. Evid. 414(d)(1) ............................................................... 36

Fed. R. Evid. 414(d)(2) .........................................................40, 41

*Fed. R. Evid. 414(d)(2)(C) ...................................... 36, 39, 41

*Fed. R. Evid. 414(d)(2)(D) ...................................... 36, 39, 41

*Fed. R. Evid. 414(d)(2)(F) ....................................... 36, 39, 41

Fed. R. Evid. 801(d)(2) ............................................................... 42

Fed. R. Evid. 804(b)(3) ............................................................... 42

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction. *See* 18 U.S.C. § 3231. The court entered the judgment against George Brooks on June 30, 2016, Doc. 118, and Brooks timely filed a notice of appeal on July 13, 2016, Doc. 120. *See* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal. *See* 28 U.S.C. § 1291.

## Statement of the Issues

I.    Whether the district court correctly denied Brooks's motion for a
      judgment of acquittal. (Brooks's Issue VIII)

II.   Whether the district court clearly erred in finding that the prosecutor had
      not challenged two potential jurors based on their race. (Brooks's Issue I)

III.  Whether the district court abused its discretion by admitting Gopoian's
      testimony and Brooks's statements about his communications with the
      father of a 12-year-old boy. (Brooks's Issues VI, VII)

IV.   Whether the district court abused its discretion by denying Brooks's
      motion for a mistrial. (Brooks's Issue II)

V.    Whether the district court correctly instructed the jury. (Brooks's Issues
      III, IV, V)

VI.   Whether Brooks is entitled to relief based on cumulative error. (Brooks's
      Issue IX)

## Statement of the Case

This is a direct appeal from a jury verdict finding George Brooks guilty
of attempting to persuade, induce, and entice a minor, through an adult
intermediary, to engage in unlawful sexual activity. Brooks challenges the
sufficiency of the evidence, certain jury instructions, and the denials of his

1

*Batson* claim, his motions to exclude certain evidence, and his motion for a mistrial.

## *Course of Proceedings*

The indictment charged Brooks with using facilities and means of interstate commerce (the Internet and a computer) to attempt to persuade, induce, and entice a minor, through an adult intermediary, to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). Doc. 9. Brooks went to trial. Docs. 66, 70, 77.

Brooks objected to two of the prosecutor's peremptory challenges based on *Batson v. Kentucky*, 476 U.S. 79 (1986). Doc. 97 at 178, 183, 193. The district court overruled both objections. *Id.* at 179–80, 185–87.

Brooks tried to exclude the testimony of his nephew, John Gopoian, and Brooks's statements about his communications with the father of a 12-year-old boy. Docs. 29, 30, 30-1 to 30-7, 31, 49, 49-1 to 49-3, 53–55, 67, 68, 75, 76; Doc. 97 at 8–26, 206–10; Doc. 98 at 3–6, 99–102; Doc. 99 at 156–60, 219–22; Doc. 100 at 90; Doc. 134 at 15–35; Doc. 135 at 10–19; Doc. 136 at 3–56. The district court overruled Brooks's objections. Doc. 76; Doc. 97 at 14–15; Doc. 98 at 3–6, 102; Doc. 99 at 156–60, 221–22; Doc. 100 at 90; Doc. 136 at 46–56.

While cross-examining the undercover officer, Brooks moved for a mistrial. Doc. 71; Doc. 99 at 94. The district court denied that motion. Doc. 72; Doc. 99 at 103–11.

Brooks objected to several jury instructions. He argued that the district court (1) constructively amended the indictment by adding "cellphone" to the facilities and means of interstate commerce specified in the indictment, Doc. 99 at 230–37, 245, 260–65; Doc. 100 at 11, 19, 90; (2) incorrectly defined "induce," Doc. 99 at 265–70; Doc. 100 at 10, 19, 22–23, 90; and (3) incorrectly denied his request for an instruction regarding his defense that he had not attempted to change the mental state of a minor,[1] Doc. 99 at 288–301; Doc. 100 at 3–7, 19–20, 90. The district court overruled those objections. Doc. 100 at 11–15, 19–24, 90.

Brooks moved for a judgment of acquittal after the government rested, Doc. 69; Doc. 99 at 205–18, after the district court instructed the jury, Doc. 100 at 90, and after the jury returned its verdict, Docs. 86, 87. The district court denied those motions. Doc. 91; Doc. 99 at 218–19; Doc. 100 at 90.

The jury found Brooks guilty. Doc. 79. The district court sentenced him to serve 216 months in prison. Doc. 118.

---

[1]Brooks submitted two theory-of-defense instructions. Doc. 99 at 288; Doc. 100 at 3. Neither is reflected on the docket.

This appeal followed. Doc. 120. Brooks filed a motion to supplement the record with documents relating to his challenge to the denial of his mistrial motion. The government opposed that motion, and this Court carried it with the case.

### Statement of the Facts

**A.    The Evidence**

In about 1972, Brooks was an adult, and his nephew, John Gopoian, was about six or seven years old. Doc. 99 at 160–64. During two or three sleepovers at Brooks's home, Gopoian woke up to find Brooks performing oral sex on him. *Id.* at 162–69, 182.

On September 5, 2015, Rodney Hyre—the FBI Special Agent in charge of a group that investigates sexual predators—visited Craigslist, one of several websites used by such predators. Doc. 98 at 28–38. Acting in an undercover capacity, Hyre searched the personal ads for words that previously had helped him find such predators, including "family" and "play," which Hyre understands are used by "people searching out for children to have sex with." Doc. 98 at 33–35; Doc. 99 at 25–26, 48. He found an ad entitled, "Family Play Time—m4m (Orlando)," that Brooks had posted. Doc. 98 at 35–39, 45; Gov't Ex. 1. (The term "m4m" means "man for man." Doc. 98 at 40.) The ad stated:

I know there are families out there
(fathers/sons/uncles/nephews/cousins) that play together. I
would like to be part of your family and enjoy the closeness you
enjoy as a family. I could be your long lost uncle. If you are all 18
or older then get back to me if interested.

*  do NOT contact me with unsolicited services or offers

Gov't Ex. 1.

Posing as the father of a 10-year-old boy and a 13-year-old girl, Hyre

responded to Brooks's ad by e-mail. Doc. 98 at 36, 44–45; Doc. 99 at 16–19;

Gov't Ex. 3 at 93. Hyre stated that he and his kids were "very close" and enjoy

"meeting new friends" and invited Brooks to contact him. Doc. 98 at 36, 44;

Gov't Ex. 3 at 93. Brooks responded, "Sounds great. Look forward to talking

more." *Id.* at 94. Hyre replied, "me too let m[e] know if yr UP for it." *Id.* at 95.

(Hyre capitalized "UP" to convey sexual arousal. Doc. 98 at 46–47.) Brooks

countered, "Always UP for new adventures." Gov't Ex. 3 at 96. Hyre agreed.

*Id.* at 97. Brooks responded, "What do you do for fun?" *Id.* at 98. (Hyre

understood Brooks was asking what type of sex he has with his kids. Doc. 98

at 50.) Hyre responded, "play with my kids :) what about you." Gov't Ex. 3 at

99. Brooks and Hyre continued to communicate over the next several days.

Doc. 98 at 38–39.

On September 6, 2015, Brooks inquired, "what do you play?" Gov't Ex.

3 at 100. Hyre replied, "we make each other happy   is this something u are

interested in   o are u just [role play]   I need to know one way or the other its cool   definitely not for everyone." *Id.* at 101; Doc. 98 at 55. Brooks stated, "Definitely interested and also like to make others happy as well." Gov't Ex. 3 at 102. Hyre replied, "very cool   let me know what u want to do   we live in lake mary area." *Id.* at 103. Brooks responded, "I am in Winter Springs so not far. I would love to come over and hang out with you and get to know you all. Do you have a pool?" *Id.* at 104.

Hyre inquired, "are u interested in both the kids being there or just one?" Gov't Ex. 3 at 105. Brooks answered, "I would be most comfortable with just your son being there to start." *Id.* at 106. Hyre responded, "that's cool   What do you wanna do with him :}" *Id.* at 107. Brooks countered, "Not sure. Tell me about yourself and what do you do with him so I know what limits are." *Id.* at 108. Hyre answered, "hes only 10   so im careful   very loving   no rough stuff.   he loves to please   and I love to watch as far as limits   what were you looking to do?" *Id.* at 109. Brooks stated, "Just be loving as well and definitely nothing rough. I would be into playing with you and if you let him watch that would be cool." *Id.* at 110. Hyre responded, "truth is   I just like boys and girls not into adult men that way, hope you don't take that personally   just not into older.   my whole reason for responding to ur ad was because I love to watch them with others." *Id.* at 111. Brooks stated, "that's cool. As long as your cool

with it and this is not a police sting," and inquired, "Have they played with other men while you watch?" *Id.* at 112. Hyre responded, "im no cop   work for a major airline   yes   my daughter several times and my boy twice.   one was a friend the other a guy from ML." *Id.* at 13. ("ML" refers to "Motherless," a website focusing on deviant sex. Doc. 98 at 61.) Brooks continued, "ok cool. let me know when would be a good time to come visit." Gov't Ex. 3 at 114. Hyre stated, "im off tues   but its up to u.   u still seem hesitant and that's cool   some guys can't go thru with it when they get here. which is not a comfortable situation at all." *Id.* at 115. Brooks said, "tuesday works for me. I'll just play it by ear and see how it goes." *Id.* at 116. The two men exchanged fictitious names and agreed to talk later. *Id.* at 117–20.

Later that day, Hyre stated, "u would love being here now :)."  Gov't Ex. 3 at 121. Brooks inquired, "Why (." *Id.* at 122. Hyre answered, "all ou[r] talk … told him that I might have a [friend] coming over." Doc. 98 at 64; Gov't Ex. 3 at 123. Brooks exclaimed, "Ahhhh." Gov't Ex. 3 at 124.

On September 8, 2015, Hyre inquired, "hows it going." Gov't Ex. 3 at 125. After exchanging pleasantries, *id.* at 126–28, Hyre inquired, "so … what wer u thinking as far as what we talked about. if u changed your mind its cool jus want to know where this is headed," *id.* at 129. Brooks responded, "would like to come over and see how things go and hopefully feel comfortable." *Id.* at

7

130. Hyre agreed, stating, "that's the main thing   just don't want anyone

doing anything they don want to. it can be a ton of fun, but only if all

consensual." *Id.* at 131. Brooks agreed. *Id.* at 132. Hyre then stated:

> but id rather talk on the phone or e-mail about what we each are
> expecting to see. too much risk for me to invite you into my home
> and have you not be who I hope you are. I hope you understand.
> I've been very clear about our lifestyle and what we enjoy. Just
> would like you to be as clear before we go further. Also I don't
> want any misunderstandings.

*Id.* at 133. Brooks agreed and gave Hyre his phone number. *Id.* at 134.

Brooks and Hyre had a phone conversation, which Hyre recorded. Doc.

98 at 68, 92–93; Gov't Exs. 4–6. They agreed they wanted to avoid

misunderstandings, and Hyre confirmed his understanding that Brooks was

interested in his 10-year-old son. Gov't Ex. 5 at 1. When Brooks said he had

not done this before but was interested in families that "hang out" and "do this

kind of stuff," Hyre stated, "that's the kind of family we are." *Id.* Hyre also

stated, "if you are cool with it, that's cool with me, if you are not, that's cool

too but you just need to let me know." *Id.* at 2. Brooks responded, "I've never

been in that kind of situation before so I mean it's kind of you know [a] new

experience." *Id.* at 2.

Hyre said his main rule is "nothing rough" or "unpleasant." Gov't Ex. 5

at 2. Brooks agreed and questioned Hyre about the "protocol." *Id.* Hyre

explained that he had "done everything" with his son, but some things "have to be more gentle than others." *Id.* Hyre also asked Brooks what he was "hoping to do." *Id.* at 2. Hyre stated, "I don't want you to do anything you don't want to do," but made clear that he "just enjoy[s] watching it" and wanted to know "what [he] could expect … to see" once he introduced Brooks to his son. *Id.* at 3. Brooks responded he was "not big on anal" and wouldn't "go there," but "if it happens it happens." *Id.* at 2–3. Brooks also said he was more interested in "touching," "holding," "oral," and "kissing" and was open to "giving" and "receiving." *Id.* at 2–3. Brooks emphasized that he wanted to understand the "ground rules" and "limits" so that he and Hyre would be "comfortable." *Id.* at 3.

When Hyre asked Brooks how he had become interested in this type of activity, Brooks said he had read stories about families that "play together." Gov't Ex. 5 at 4. Brooks also said he previously had responded to a similar ad posted by the father of a 12-year-old boy who also did "this." *Id.* at 4–5. Brooks had sent that father an e-mail expressing his interest and had exchanged more e-mails, but it "never went anywhere" because the father had stopped communicating. *Id.* Hyre responded, "it is tough to find people that are kind of down with all this, but … we definitely are." *Id.* at 5. Brooks agreed. *Id.*

9

Hyre asked Brooks what he wanted to do. Gov't Ex. 5 at 5–6. Brooks stated, "I like kids but when it comes to older I like women, so you're cool with that though right?" *Id.* at 5. Brooks responded, "Oh yea that's fine." *Id.* Hyre confirmed he wanted to avoid confusion and wanted only to "watch." *Id.* With respect to anal sex, Brooks confirmed that he was "more of a bottom than a top" and that, although it would depend on "how things go," he would be "more into receiving than giving." *Id.* When Hyre stated his son had not had anal sex, Brooks confirmed that he "wouldn't go down that road at all" and that he didn't want to do anything that would make them uncomfortable. *Id.* at 5–6. As to oral sex, Brooks confirmed he was interested in receiving or giving it. *Id.* at 6. Brooks also stated, "[I]f things go well, … maybe we could do it again sometime." *Id.*

Eventually, Brooks and Hyre agreed to meet at a shopping center. Gov't Ex. 5 at 7–8. Hyre wanted to meet there so Hyre could confirm Brooks was "not a nut case" before bringing him to his home. *Id.* at 7. Brooks understood Hyre's concern. *Id.* As they finalized their plan, Hyre stated, "[I]f you know for sure you're not going to change your mind … I'll keep them out of school." *Id.* at 8. Brooks responded, "Ok." *Id.* at 8. Brooks also stated, "[L]et's just start with your boy." *Id.*

After the phone call, Brooks told Hyre that his penis is uncircumcised and that he "always keep[s] it clean." Gov't Ex. 3 at 138. He also inquired whether he should shave his scrotum, pubic area, and chest. *Id.*

The day before their meeting, Hyre stated that "trimmed is probably best," that he was interested in his son's reaction to an uncircumcised penis, that their conversation had gotten him "pretty excited," and that he had had some "special times" with both of his children. Gov't Ex. 3 at 139. Brooks reiterated his concern about a "police sting." *Id.* at 140–42. Hyre stated, "Dude, u don't have to do a thing," and continued, "I know this would be a lot of fun but its up to u." *Id.* at 143. Hyre also said he was not a law enforcement officer. *Id.* Brooks replied, "Ok great. I feel better about this. I will see you at 11am tomorrow." *Id.* at 144. Hyre confirmed the meeting, and Brooks stated that, "for now," he was interested only in Hyre's son. *Id.* at 145–46.

Brooks inquired, "What did you do with them last night?" Gov't Ex. 3 at 146. Hyre responded, "oral on her  and did light anal on him  so hot.  she watched and liked it." *Id.* at 147. Brooks stated, "nice," and asked whether Hyre's son had caused him to ejaculate. *Id.* at 148–51. When Hyre said yes and that his son "loves to please," Brooks again stated, "nice." *Id.* at 150–53.

11

The next day, Brooks and Hyre discussed the anticipated rendezvous. Gov't Ex. 3 at 154–63. They agreed it would be a "private thing." *Id.* at 156–58. When Brooks stated, "I'm still a little nervous," and suggested he would be "good to go" after they met, Hyre said, "me too   but the thing to remember is that its consensual. he gets pleasure out of it and im his dad and its good with me." *Id.* at 162–63.

At the appointed time, Brooks parked behind another officer posing as Hyre. Gov't Ex. 3 at 174; Doc. 98 at 91–94; Doc. 99 at 129–32. When Brooks approached the decoy, officers arrested him. Doc. 98 at 95–96; Doc. 99 at 132–33. Brooks exclaimed, "I knew this was going to happen." Doc. 98 at 96; Doc. 99 at 133.

Hyre seized Brooks's cellphone. Doc. 98 at 104, 106; Doc. 99 at 140–43; Gov't Exs. 8–10. Brooks consented to a search of his cellphone. Doc. 98 at 104; Doc. 99 at 87, 143; Gov't Ex. 7. Brooks disclosed his e-mail addresses and passwords, consented to searches of his e-mail accounts and vehicle, and authorized the officers to "assume his identity." Doc. 98 at 104–05; Doc. 99 at 87.

Brooks agreed to answer questions. Doc. 98 at 96–97. He admitted that he had posted several ads regarding incestuous sex (including the one at issue here), that he had used his cellphone to communicate with Hyre about having

12

oral sex with Hyre's 10-year-old son, and that he had traveled to the shopping center for that purpose. *Id.* at 102–04. (If Brooks had engaged in oral or anal sex with Hyre's 10-year-old son, he could have been charged with sexual battery of a minor under Fla. Stat. § 794.011. *Id.* at 109.) He admitted that he had shaved his testicles the previous night. *Id.* at 103. He further admitted that about four years earlier he had responded to a similar ad, that he had communicated with a man about having sex with the man's 12-year-old son, and that the man had stopped communicating. *Id.*

A forensic examiner analyzed Brooks's cellphone. Doc. 98 at 105; Doc. 99 at 136–37, 144–52. The cellphone functioned as a "mobile communication device" and a "hand-held computer," Doc. 99 at 140, and was a "smart" phone that could access the Internet, Doc. 98 at 109. All of the e-mails between Brooks and Hyre had been transmitted over the Internet through Brooks's cellphone. Doc. 98 at 109. The cellphone contained all but four of those e-mails. Doc. 98 at 105–06; Doc. 99 at 147–51.

## B.    The Mistrial Motion

On cross-examination by Brooks's counsel, Hyre confirmed that Brooks had authorized the officers "to search all of [his] phone, all of his e-mails, [and] assume his identity." Doc. 99 at 87. He also confirmed that the officers had not

found any child pornography on Brooks's phone. *Id.* Counsel then inquired as

follows:

> Q.   Okay. There were no other e-mails to anyone about
>      children?
> A.   Not that I … gathered, no ma'am. Not on his phone.
> Q.   Not on his e-mails?
> A.   That's not true.
> Q.   That's not true?
> A.   No. There's—in his e-mail that he gave us permission to
>      search, I found other e-mails.
> Q.   You found other e-mails about children?
> A.   Yes, ma'm.
> Q.   What—I'm sorry. Were those e-mails from Craigslist ads?
> A.   No ma'am. They were from Mr. Brooks' e-mail account.
> Q.   About sex with children?
> A.   Yes, ma'am.
> Q.   And these e-mails were turned over to the defense?
> A.   No, ma'am.
> Q.   No. Okay. So there are other e-mails about sex with children
>      that you found on his e-mail?
> A.   Yes, ma'am.

*Id.* at 87–88.

The prosecutor requested a sidebar regarding the e-mails. Doc. 99 at 88.

She explained that both parties had had access to Brooks's e-mail accounts and

passwords, that the e-mails were linked to Brooks's Craigslist account, and

that, although she had not planned to address those e-mails in the

government's case-in-chief, they were "ready for cross-examination or

rebuttal." *Id.* at 88–89.

14

Brooks requested a recess so that his counsel could review the referenced e-mails. Doc. 99 at 90. In granting that request, the district court summarized the government's theory of prosecution and Brooks's theory of defense. *Id.* It also told Brooks's counsel to avoid asking questions she did not know the answer to because she might not like the answers and could open the door to additional incriminating evidence. *Id.* at 90–92.

After the recess, Brooks moved for a mistrial. Doc. 71; Doc. 99 at 94. He argued that, by failing to produce the referenced e-mails, the government had violated Fed. R. Crim. P. 16(a)(1)(E), which requires the government to provide a defendant with specified items that are material to the defense, that it intended to use in its case-in-chief at trial, or that had been obtained from or belonged to the defendant. Doc. 99 at 94–98, 102–03. Brooks represented that, during discovery, the government had produced a consent form in which he had authorized investigators to "change all passwords to his accounts and assume his identity" and had acknowledged that investigators would "change the passwords … so that [he] will no longer have access." *Id.* at 95. He also represented that the government had failed to produce the pertinent e-mails and that, during discovery, he had understood he could not access the e-mail accounts listed in the consent form because the government had failed to tell

15

him it had not changed the passwords. *Id.* at 95–98, 102–03. The government

opposed Brooks's motion. *Id.* at 98–102.

The district court and the parties discussed the discovery process,

Brooks's cellphone, the e-mail accounts listed in the consent form, the

referenced e-mails, and the questions that had triggered the motion. Doc. 99 at

95–104. The prosecutor noted that the witness had been obligated to testify

truthfully. *Id.* at 99. She also confirmed that, although Brooks had signed the

consent form, the investigators had not changed his passwords. *Id.* Brooks

confirmed that his main concern was that Hyre had mentioned discoverable e-

mails that had not been produced and that Brooks had been unable to access

them due to the manner in which the government had produced discovery. *Id.*

at 98. He also argued that the referenced e-mails had been necessary to prepare

his defense. *Id.* at 97.

Eventually, the district court addressed defense counsel and inquired,

"Did you try to assess those e-mails?" [2] Doc. 99 at 103. Counsel stated, "No."

*Id.* The court then denied the mistrial motion, determining that the

government had not violated Rule 16(a)(1)(E) and that, although there had

been some confusion about the passwords for the e-mail accounts, Brooks had

---

[2]Given the context, the district court presumably used—or meant to
use—the term "access." *See* Doc. 99 at 102–04 (discussing whether Brooks had
been able to "access" the e-mails that had triggered mistrial motion).

16

known about the accounts and should have brought the matter to the court's attention before trial. Doc. 72; Doc. 99 at 103–04.

Brooks requested a limiting instruction. Doc. 99 at 104. Although the court cautioned Brooks about "re-ringing the bell," it said it would consider instructing the jury to disregard "references to e-mails unrelated to this case sent by [Brooks] soliciting sex from minors other than the fictitious minor referenced in this case." *Id.* at 107. Brooks requested an alternative instruction directing the jury to disregard Hyre's testimony "prior to the break … regarding previous e-mails." *Id.* at 108. The court denied Brooks's request because this case involves numerous e-mails, because any limiting instruction should be "specific to the exact e-mails [counsel had] referenced," and because Brooks's proposed instruction would inject ambiguity. *Id.* at 108–09. Brooks withdrew his request, believing that the court's proposed instruction would have done more harm than good. *Id.* at 108–09. Instead, at Brooks's request, the court prohibited the government from mentioning the challenged testimony absent further direction. *Id.* at 109–11.

### *Standard of Review*

I.    This Court should review de novo the district court's denial of Brooks's motion for a judgment of acquittal, viewing the evidence in the light most favorable to the verdict and making all reasonable inferences and

credibility choices in favor of the government. *See U.S. v. Merrill,* 513 F.3d 1293, 1299 (11th Cir. 2008). The conviction "must be upheld unless the jury could not have found [Brooks] guilty under any reasonable construction of the evidence." *Id.*

II.    This Court should review for clear error the district court's finding that the prosecutor did not challenge two potential jurors based on their race. *See U.S. v. Robertson*, 736 F.3d 1317, 1324 (11th Cir. 2013). To the extent that Brooks argues that the prosecutor's reason for challenging Aviles applied to other unchallenged potential jurors, Brooks's brief at 23, this Court should review his argument only for plain error because he did not raise it below. *See U.S. v. Mangaroo,* 504 F.3d 1350, 1353 (11th Cir. 2007); *U.S. v. Pubien*, 349 F. App'x 473, 476 (11th Cir. 2009); *cf. U.S. v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (appellant must raise objection sufficient to apprise trial court and opposing party of "particular grounds" upon which appellate relief will later be sought).

III.   This Court should review evidentiary rulings for abuse of discretion, *U.S. v. Gunn*, 369 F.3d 1229, 1236 (11th Cir. 2004), and should uphold the district court's decision to admit evidence, even though the stated ground for admission is erroneous, if admission would have been proper on other grounds, *U.S. v. Paradies*, 98 F.3d 1266, 1290 (11th Cir. 1996). This Court

should not correct an error that did not affect Brooks's substantial rights. *See* Fed. R. Crim. P. 52(a); Fed. R. Evid. 103(a).

IV.    This Court should review the denial of Brooks's motion for a mistrial for an abuse of discretion. *See U.S. v. McGarity*, 669 F.3d 1218, 1232 (11th Cir. 2012).

V.    This Court should review de novo whether the jury instructions were legally correct, *see U.S. v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013), whether the jury instructions constructively amended the indictment, *see U.S. v. Gutierrez*, 745 F.3d 463, 473 (11th Cir. 2014), and whether the district court correctly interpreted a statute, *see U.S. v. Murrell*, 368 F.3d 1283, 1285 (11th Cir. 2004). This Court should review for abuse of discretion the phrasing of the jury instructions, *see U.S. v. Seabrooks,* 839 F.3d 1326, 1332 (11th Cir. 2016), *petition for certiorari filed*, No. 16-8072 (U.S. Feb. 16, 2017), and the refusal to instruct the jury regarding Brooks's theory of defense, *see U.S. v. Votrobek*, 847 F.3d 1335, 1344 (11th Cir. 2017).

Jury instructions are subject to harmless error review. *Seabrooks*, 839 F.3d at 1332. An error is harmless if the reviewing court is satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Id.* at 1332–33.

19

VI.    This Court should review de novo whether the district court committed a combination of errors that warrant a new trial. *See U.S. v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007).

## Summary of the Argument

I.    The district court correctly denied Brooks's motion for a judgment of acquittal because the record contained ample evidence that, through Hyre, Brooks had attempted to persuade, induce, and entice Hyre's 10-year-old son to agree to have oral and possibly anal sex with him and had taken substantial steps toward that goal.

II.    The district court did not clearly err in finding that the prosecutor had not challenged two potential jurors based on their race. Brooks made only generic claims under *Batson v. Kentucky*, 476 U.S. 79 (1986), and the court made no finding that he had established a prima facie showing that the prosecutor had challenged the jurors based on their race. In any event, the prosecutor gave race-neutral reasons for both challenges, and the court correctly determined that Brooks had not demonstrated purposeful discrimination.

III.    The district court did not abuse its discretion by admitting Gopoian's testimony that Brooks had performed oral sex on him as a child and Brooks's statements that he had communicated with a man about having sex

20

with his 12-year-old son. Gopoian's testimony was admissible under Fed. R.

Evid. 414. Brooks's statements were admissible because they arose out of the

same series of transactions as the charged offense, were necessary to complete

the story of the crime, and were inextricably intertwined with the evidence of

the charged offense. Such evidence was highly probative, and its probative

value was not substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, particularly given the court's

limiting instructions. Moreover, the court continued the trial so Brooks could

investigate Gopoian's testimony and took a break during Gopoian's testimony

so Brooks could prepare to cross-examine him. In any event, given the

overwhelming evidence of guilt, any error in admitting this evidence would

have been harmless.

IV.    The district court did not abuse its discretion by denying Brooks's

motion for a mistrial. Notwithstanding any confusion about Brooks's ability to

access his e-mail accounts, Brooks did not attempt to access the accounts and

did not bring the matter to the court's attention before trial. Brooks's counsel

elicited the challenged testimony on cross-examination. And, before trial,

Brooks knew the jury would be hearing Gopoian's testimony and Brooks's

statements about his prior communications with the father of a 12-year-old

boy. So the mere fact that Brooks's e-mail accounts contained additional e-

21

mails about sex with children (and Hyre's brief testimony to that effect) could not have had a significant impact on the trial or on Brooks's ability to formulate a defense, particularly given the overwhelming evidence of guilt, the court's jury instructions, the fact that Brooks withdrew his request for a limiting instruction, and the fact that the court prohibited the government from mentioning the challenged testimony.

V.    The district court correctly instructed the jury. The court did not broaden the charged offense—and, therefore, did not constructively amend the indictment—by adding "cellphone" to the facilities and means of interstate commerce specified in the indictment. The court correctly defined "induce" under this Court's precedent, and any error in defining "induce" would have been harmless beyond a reasonable doubt because no rational jury that received Brook's definition would have failed to convict him. Finally, the court did not abuse its discretion by denying Brooks's request for an instruction regarding his defense that he had not attempted to change the mental state of a minor because (1) the requested instruction was another attempt to modify the definition of "induce," (2) the instructions as given covered essentially the same ground as the requested instruction, and (3) any error in denying the requested instruction would have been harmless beyond a reasonable doubt because no rational jury that received it would have failed to convict him.

22

VI.    Brooks is not entitled to relief based on cumulative error. He failed
to establish any error at all, let alone cumulative error warranting a new trial.

## Argument and Citations of Authority

### I.    The district court correctly denied Brooks's motion for a judgment of acquittal. (Brooks's Issue VIII)

Brooks argues that the district court erred in denying his motion for a judgment of acquittal because the evidence failed to show that he had intended to cause or had taken a substantial step toward causing a minor to assent to sexual activity. Brooks's brief at 49–51. According to Brooks, there was "no assent to cause" because Hyre had stated he had previously had sex with his 10-year-old son and his son "enjoyed it," and because Brooks had stressed he only desired sexual contact with which everyone would be comfortable. *Id.* The record contradicts this argument.

To establish a violation of 18 U.S.C. § 2422(b), the government needed to prove that Brooks had (1) used a facility of interstate commerce, (2) to knowingly persuade, induce, entice, or coerce, or attempt to persuade, induce, entice, or coerce, (3) any person under 18 years old, (4) to engage in illegal sexual activity.[3] *See U.S. v. Cochran*, 534 F.3d 631, 633 (7th Cir. 2008). With regard to intent, the government had to prove that Brooks had "intended to

---

[3]The "coerce" prong of the statute is not at issue here. *See* Doc. 9

23

cause assent on the part of the minor, not that he acted with the specific intent to engage in sexual activity." *U.S. v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010) (quotation marks omitted). "The statute criminalizes an intentional attempt to achieve a *mental* state—a minor's assent," *id.*, which can be obtained through direct communication with the minor, 18 U.S.C. § 2422(b), or through communication with an adult intermediary, *Lee*, 603 F.3d at 912–13.

To obtain an attempt conviction, the government needed to "prove (1) that [Brooks] had the specific intent to engage in the criminal conduct for which he [was] charged and (2) that he took a substantial step toward the commission of the offense." *U.S. v. Murrell,* 368 F.3d 1283, 1286 (11th Cir. 2004). A defendant takes a "substantial step" when his "objective acts mark his conduct as criminal such that his acts as a whole strongly corroborate the required culpability." *Id.* at 1288. Thus, to prove that Brooks attempted to violate section 2422(b), the government needed to prove that he (1) "acted with the intent to persuade, induce, entice, or coerce [Hyre's 10-year-old son] to engage in unlawful sexual activity" and (2) "took a substantial step toward his intended goal of inducing [the boy] to engage in sexual activity with him." *Id.* at 1287–88. In reviewing the substantial-step issue, this Court will consider the "totality" of Brooks's actions. *Lee*, 603 F.3d at 916.

24

Notwithstanding his assertions in his brief at 49–50, Brooks initiated the conversations about having sex with a child. Using code words commonly used by people "searching … for children to have sex with," he posted an ad seeking to become the "long lost uncle" in a "family" that "plays" (i.e., has sex) together. Doc. 98 at 33–42, 45; Doc. 99 at 25–26, 35, 40, 48; Gov't Ex. 1. Hyre responded to Brooks's ad, stating that he and his 10-year-old son and 13-year-old daughter were "very close" and enjoyed meeting new friends, and inviting Brooks to contact him. Gov't Ex. 3 at 93. Brooks replied that he was interested. *Id.* at 94. Although Brooks claims that he posted an "adults-only advertisement," Brooks's brief at 49–50, the evidence shows that Craigslist removes ads that "seek out children for sex" and that sexual predators often include an "18 or older" caveat to try to protect their ads. Doc. 98 at 41–42; Doc. 99 at 35. In any event, Brooks's reply to Hyre's response shows the ad was not limited to adults.

Over the next five days, Brooks and Hyre exchanged e-mails and had one telephone conversation. Gov't Ex. 3 at 95–174; Gov't Exs. 4, 5. Eventually, Hyre agreed to let Brooks have oral and possibly anal sex with his 10-year-old son. *Id.* And Brooks agreed to meet Hyre at a shopping center so that Hyre could verify that Brooks was "not a nut case" before bringing him to his home. Gov't Ex. 5 at 7.

Brooks and Hyre discussed Hyre's desire to watch his kids have sex with others, the sex acts that Hyre's kids had already performed with Hyre and with others (while Hyre had watched), Brooks's interests in incest and having sex with kids (including Hyre's), Brooks's desire to start with Hyre's son, the sex acts that Brooks wanted to perform with Hyre's son, the need for secrecy, the fact that Brooks had an uncircumcised penis, and the fact that Brooks intended to shave his scrotum, pubic area, and chest before the sexual encounter. *See* Statement of the Facts, Part A. Brooks repeatedly reassured Hyre—and thereby tried to obtain Hyre's permission to let him have sex with his son—by agreeing on ground rules for the sexual encounter, Gov't Ex. 3 at 108, 112; Gov't Ex. 5 at 1–2, 5–6, by emphasizing he wanted everyone to be "comfortable," Gov't Ex. 3 at 110, 112, 130–34; Gov't Ex. 5 at 2–3, by agreeing to talk to Hyre on the phone, Gov't Ex. 3 at 133–37, and by confirming he understood why Hyre would want to verify he was "not a nut case." Gov't Ex. 5 at 7–8; *see* Gov't Ex. 3 at 133–34. Although Hyre gave Brooks numerous opportunities to end the negotiations, Gov't Ex. 3 at 93, 101, 115, 129, 130–33, 143, 162–63; Gov't 5 at 1–3, 8, Brooks persisted. By worrying about a "police sting," Gov't Ex. 3 at 112, 142, Brooks confirmed he

was interested in having sex with Hyre's son.[4] *See Lee*, 603 F.3d at 915 (reasonable jury could find that defendant's concern about police sting showed interest in sex with child because sex with adult "would not have concerned law enforcement"). Finally, Brooks stated, "[I]f things go well, … maybe we could do it again sometime." Gov't Ex. 5 at 6.

When the officers arrested Brooks, he stated, "I knew this was going to happen." Doc. 98 at 96; Doc. 99 at 133. He later confessed. Doc. 98 at 102–04.

Based on this overwhelming evidence, a rational jury could have found beyond a reasonable doubt that—through Hyre—Brooks had attempted to persuade, induce, and entice Hyre's 10-year-old son to agree to engage in unlawful sexual activity (i.e., oral and possibly anal sex) with him. *See U.S. v. Howard*, 625 F. App'x 934, 935–36 (11th Cir. 2015) (rejecting argument that evidence was insufficient to show defendant intended to induce minor to have sex because minor assented merely by responding to defendant's ad), *cert. denied*, 136 S. Ct. 914 (2016). This is particularly true when the evidence is viewed in light of Gopoian's testimony that Brooks had performed oral sex on him as a child, Doc. 99 at 160–72, 177–204, and Brooks's statements that he

---

[4]Although Brooks also inquired about having sex with Hyre, Gov't Ex. 3 at 110, Hyre explained that he only wanted to watch Brooks have sex with his kids, *id.* at 111.

had communicated with another man about having sex with the man's 12-year-old son.[5] Doc. 98 at 103; Gov't Ex. 5 at 4–5.

A rational jury also could have found beyond a reasonable doubt that Brooks had taken substantial steps toward his goal of convincing Hyre's son—through Hyre—to agree to have sex with him. As previously discussed, Brooks got the ball rolling by posting the ad, sent many e-mails (in which he negotiated the terms of the sexual encounter and reassured Hyre about his intentions), participated in a telephone conversation with Hyre (which was important not only because it moved the ball forward, but also because Hyre had requested it to avoid any misunderstandings and to confirm Brooks was who he appeared to be), and met Hyre at the shopping center (which was important not only because it moved the ball forward, but also because Hyre had arranged it to verify Brooks was "not a nut case"). Those acts were "objective acts [that] mark [Brooks's] conduct as criminal such that his acts as a whole strongly corroborate the required culpability," *Murrell,* 368 F.3d at

---

[5]The district court gave an entrapment instruction. Doc. 78 at 16. Although Brooks erroneously asserts that Hyre initiated the discussion about sex with children, he does not argue that a reasonable jury could not have rejected his entrapment defense. *See* Brooks's brief at 49–51. So Brooks has abandoned any such argument. *See* Fed. R. App. P. 28(a)(8); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014). In any event, the evidence shows that Hyre did not induce Brooks to commit the charged offense and that Brooks had been predisposed to commit that offense. *See* Statement of the Facts, Part A.

1288. So they were "substantial steps" towards Brooks's ultimate goal. *See U.S. v. Worsham*, 479 F. App'x 200, 201–02, 205 (11th Cir. 2012) (defendant took substantial step toward violating section 2422(b) by chatting with FBI agent posing as mother of 7-year-old girl, describing sex acts he desired to perform on girl, arranging a meeting, and driving 100 miles to close deal).

## II. The district court did not clearly err in finding that the prosecutor had not challenged two potential jurors based on their race. (Brooks's Issue I)

Brooks argues that the district court clearly erred in finding that the prosecutor had not struck Ganesh Ramachandran (Indian-American) and Angel Aviles (Hispanic) based on their race. Brooks's brief at 19–24. This argument is contradicted by the record, Doc. 97 at 44–45, 76–77, 118–20, 178–80, 183–88, 193, 205, and is inconsistent with the applicable law.

The Supreme Court has established a three-part test for adjudicating *Batson* claims. *See Batson v. Kentucky*, 476 U.S. 79, 93–98 (1986). First, the claimant must make a prima facie showing that the striking party exercised a peremptory challenge based on race. *Id.* at 96–97. In deciding whether the claimant has met that burden, the district court should consider all relevant circumstances. *Id.* at 96.

Second, if the claimant has established a prima facie case, the striking party must offer a race-neutral basis for the strike. *Batson*, 476 U.S. at 97–98.

"The reason given for the peremptory strike need not be a good reason. It can be an irrational, 'silly or superstitious' reason, as long as it is not a discriminatory reason." *U.S. v. Hill*, 643 F.3d 807, 837 (11th Cir. 2011); *accord Batson*, 476 U.S. at 89.

Third, the district court must determine, in light of the evidence, whether the claimant has shown purposeful discrimination. *Batson*, 476 U.S. at 98. The critical question is the persuasiveness of the striking party's justification. *Miller-El v. Cockrell*, 537 U.S. 322, 338–39 (2003). An implausible justification may (and probably will) be found to be a pretext for purposeful discrimination. *Id.* at 339. "In that instance, the issue comes down to whether the trial court finds the [striking party's] race-neutral explanations to be credible." *Id.*

"The opponent of the strike bears the burden of persuasion regarding racial motivation." *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015); *accord Hill*, 643 F.3d at 837. A district court's ruling on a *Batson* claim is entitled to great deference and must be sustained unless it is clearly erroneous. *U.S. v. Robertson*, 736 F.3d 1317, 1324 (11th Cir. 2013); *accord Davis*, 135 S. Ct. at 2199; *Batson*, 476 U.S. at 98 n.21.

Here, the district court made no finding that Brooks had established a prima facie case, as required by step one. *See* Doc. 97 at 178–87. Indeed, Brooks made only generic *Batson* claims. *Id.* at 178, 183. Standing alone, such

30

claims do not establish a prima facie showing of discriminatory animus. *U.S. v. Pubien*, 349 F. App'x 473, 476–77 (11th Cir. 2009) (mere allegation that prospective black juror was challenged does not establish discriminatory animus). And the court made no finding that Brooks had established a prima facie case. Doc. 97 at 178–87. Instead, it noted that Ramachandran was Indian-American and inquired whether the prosecutor wanted to respond to Brooks's objection. *Id.* at 178–79. As to Aviles, when the prosecutor said that she had not exhibited a "pattern" of race-based strikes and that the panel was "pretty diverse … to this point," the court noted that the government was down to its last peremptory challenge, opined that "[o]ne is an anomaly" and "[t]wo is the beginning of a pattern," and requested a non-racial reason. *Id.* at 183–84. But, even if the court had made the required findings, Brooks still would be entitled to no relief.

As to step two, the prosecutor provided race-neutral reasons for both challenges. She stated that she had challenged Ramachandran based on his demeanor when answering questions about his background, including his knowledge of a similar case and his ability to be fair and impartial. Doc. 97 at 179. And she stated that she had challenged Aviles because he had been the only other potential juror she had flagged for possible peremptory challenge

31

and because she had lacked sufficient information about his background. *Id.* at 184–85.

Finally, regarding step three, Brooks responded to the prosecutor's reasons for challenging Ramachandran by stating, "I don't think demeanor is enough to survive a *Batson* challenge," and asserting that she should have asked the court to question Ramachandran about his demeanor at sidebar. Doc. 97 at 179. The district court then overruled Brooks's claim regarding Ramachandran, stating, "I don't think there's a racial component … involved," noting that the prosecutor had not pursued a pattern of race-based challenges, and determining that the prosecutor had given a sufficient non-racial reason. *Id.* at 179–80. As to Aviles, Brooks responded to the prosecutor's reasons for challenging Aviles by stating, "I don't think that's a race-neutral reason," and by asserting that the prosecutor should have asked the court to elicit additional information from Aviles. *Id.* at 184–87. The court then considered the "entire context" and overruled Brooks's claim regarding Aviles, explaining that it was having trouble accepting his assertion that an Hispanic prosecutor would discriminate against a potential Hispanic juror in a case that involved a Caucasian defendant, and determining that the prosecutor had given a sufficient race-neutral reason. *Id.* at 185–87.

Under these circumstances, and in light of the great deference afforded to the district court's rulings on Brooks's *Batson* claims, the court did not clearly err in finding the prosecutor had not struck the two potential jurors based on their race. This is particularly true given that the final jury (12 jurors plus one alternate) included four minority jurors—two African-Americans and two Hispanics. Doc. 97 at 205; *see Pubien*, 349 F. App'x at 477 (noting that record established that government did not challenge three black jurors seated on petit jury).

Brooks argues that the prosecutor failed to explain her concerns about Ramachandran's demeanor when answering questions about his background and that the district court failed to evaluate the prosecutor's proffered reason. Brooks's brief at 21–22. To the contrary, the prosecutor stated her concerns. Doc. 97 at 179. Brooks responded. *Id.* And, after hearing those comments, the court found that the prosecutor had not struck Ramachandran based on his race. *Id.* at 179–80. Nothing more was required. *See Robertson*, 736 F.3d at 1328 (appellate court may make common-sense judgment that trial court implicitly found striking party's race-neutral explanations to be credible at step three of *Batson* inquiry); *Greene v. Upton*, 644 F.3d 1145, 1155 (11th Cir. 2011) ("*Batson* does not require elaborate factual findings.").

33

Brooks also argues that, in overruling his claim regarding Ramachandran, the district court incorrectly focused on whether the prosecutor had engaged in a pattern of discriminatory strikes. Brooks's brief at 21. Although the court noted that the prosecutor had not engaged in a pattern and suggested it might reconsider its ruling if she were to do so, it ultimately based its decision on its finding that the prosecutor had not challenged Ramachandran based on his race. Doc. 97 at 179–80.

As to Aviles, Brooks argues that, when the district court said it was having trouble accepting his assertion that an Hispanic prosecutor would discriminate against a potential Hispanic juror in a case that involved a Caucasian defendant, the court clearly erred by "basing its decision, in part, on its own racial reasoning." Brooks's brief at 22–23. The record shows, however, that the court was noting that Brooks had failed to show that the prosecutor's challenge had been based on Aviles's race and was laying a foundation for its finding that, given the "entire context," the prosecutor had given a sufficient race-neutral reason. Doc. 97 at 185–87.

Brooks also argues the district court clearly erred by accepting the prosecutor's proffered reason for challenging Aviles because she had not challenged other potential jurors with similar backgrounds. Brooks's brief at 23. Because Brooks did not make that argument below, this Court should

34

review it only for plain error. *See* Standard of Review, Part II. And, under the circumstances, the district court did not plainly err by failing sua sponte to sustain Brooks's claim regarding Aviles based on this new argument, particularly given that, as previously discussed, the court did not clearly err in determining that the prosecutor had given a sufficient race-neutral reason.

### III.    The district court did not abuse its discretion by admitting Gopoian's testimony and Brooks's statements about his communications with the father of a 12-year-old boy. (Brooks's Issues VI, VII)

Brooks argues the district court abused its discretion by admitting Gopoian's testimony about the prior incidents during his childhood in which Brooks had performed oral sex on him, Brooks's brief at 39–47, and Brooks's statements regarding his similar communications with a man about having sex with the man's 12-year-old son, *id.* at 47–49. He argues that the court should have excluded such evidence because Fed. R. 414 did not cover Gopoian's testimony, because Brooks's statements about his communications with the father of the 12-year-old boy were not inextricably intertwined with the charged offense, and because such evidence was inadmissible under Fed. R. Evid. 403. Brooks's brief at 44–49. Those arguments fail.

Evidence is "relevant" if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence is admissible except as otherwise provided by law. Fed. R. Evid. 402.

Under Fed. R. Evid. 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b), however, is subject to several exceptions, including at least two pertinent to this appeal.

Rule 414 provides that, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a). "The evidence may be considered on any matter to which it is relevant." *Id.* The rule defines "child" as "a person below the age of 14." Fed. R. Evid. 414(d)(1). And it defines "child molestation" to include an attempt to commit a federal or state crime "involving … contact between any part of the defendant's body… and a child's genitals or anus … [or] contact between the defendant's genitals or anus and any part of a child's body." Fed. R. Evid. 414 (d)(2)(C), (D), and (F).

As Brooks acknowledges, Doc. 99 at 312–13; brief at 40, unlike Rule 404(b), Rule 414 permits the admission of other instances of child molestation as proof of a defendant's propensity to commit such offenses. *See, e.g.*, *U.S. v.*

36

*Levinson*, 504 F. App'x 824, 827 (11th Cir. 2013); *U.S. v. Kelly*, 510 F.3d 433, 436–37 (4th Cir. 2007); *U.S. v. Larson*, 112 F.3d 600, 604 (2d Cir. 1997). Rule 414 reflects Congress's view that such evidence typically is relevant and probative in child molestation cases. *See, e.g.*, *Kelly*, 510 F.3d at 437. Rule 414 imposes no time limit on the acts that may be admitted. *See, e.g., U.S. v. Hawpetoss*, 478 F.3d 820, 824 (7th Cir. 2007); *Larson*, 112 F.3d at 605. Evidence admitted under Rule 414, however, must satisfy Rule 403. *U.S. v. Woods*, 684 F.3d 1045, 1064–65 (11th Cir. 2012).

Evidence of an uncharged act also is admissible if it is intrinsic to the charged offense. *U.S. v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Intrinsic evidence is admissible if it (1) arose out of the same transaction or series of transactions as the charged offense, (2) is necessary to complete the story of the crime, or (3) is inextricably intertwined with the evidence of the charged offense. *Id.* When evidence of uncharged acts is intrinsic, Rule 404(b) is not implicated and the focus is on Rule 403. *U.S. v. Richardson*, 764 F.2d 1514, 1521–22 (11th Cir. 1985).

Rule 403 provides in part that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Exclusion under Rule 403 is an extraordinary remedy that should be used sparingly. *U.S.*

37

*v. Fallen*, 256 F.3d 1082, 1091 (11th Cir. 2001). The balance should be struck in favor of admissibility. *Id.*

All evidence that tends to establish guilt is prejudicial. *U.S. v. Terzado-Madruga*, 897 F.2d 1099, 1119 (11th Cir. 1990). Rule 403, however, addresses not whether the evidence is prejudicial, but whether its probative value is substantially outweighed by the danger of unfair prejudice. *U.S. v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992). Only evidence that is unfairly prejudicial— with prejudice substantially outweighing probative value—must be excluded. *Terzado-Madruga*, 897 F.2d at 1119.

In criminal cases, "unfair prejudice" means "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997). In reviewing the admission of evidence under Rule 403, this Court examines the evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *U.S. v. Brown*, 441 F.3d 1330, 1362 (11th Cir. 2006).

### A.    Gopoian's Testimony

The district court admitted Gopoian's testimony under Rule 414.[6] Doc. 76; Doc. 98 at 3–6; Doc. 99 at 156–60, 219–22; Doc. 100 at 90; Doc. 136 at 46–49. Because the charged offense involved an attempt by Brooks—through Hyre—to convince Hyre's 10-year-old son to agree to have oral and possibly anal sex with him, it clearly constituted "child molestation" under the plain language of Rule 414(d)(2)(C), (D), and (F). In addition, because the court gave the jury an entrapment instruction, Doc. 78 at 16, Gopoian's testimony was highly probative—and extremely important—because it showed that Brooks had been predisposed to commit the charged offense. Moreover, the probative value of Gopoian's testimony was not substantially outweighed by the danger of unfair prejudice. It is precisely the type of propensity evidence that Rule 414 covers. *See, e.g.*, *Levinson*, 504 F. App'x at 827; *Kelly*, 510 F.3d at 436–37; *Larson*, 112 F.3d at 604. It involves a sex act—oral sex with a child— that is identical to one of the sex acts that Brooks was trying to convince Hyre and his son to let him perform here. It did not "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged," *Old Chief*, 519 U.S. at 180, particularly given all of the other

---

[6]It also could have admitted Gopoian's testimony as evidence of motive, intent, knowledge, and absence of mistake or accident under Rule 404(b)(2).

evidence. And it did not create a danger that the issues would be confused or the jury would be misled, particularly given that the court instructed the jury that Brooks was on trial only for the charged conduct and offense, that Gopoian's testimony alone was insufficient to convict Brooks of the charged offense, and that the government needed to prove each element of the charged offense. Doc. 78 at 10. Finally, the court continued the trial so that Brooks could investigate Gopoian's testimony, Doc. 136 at 51–56; Docs. 44, 58, 59, and took a break during Gopoian's testimony so that Brooks could prepare to cross-examine him, Doc. 97 at 15; Doc. 99 at 172.

Under these circumstances, the district court did not abuse its discretion by admitting Gopoian's testimony under Rule 414. But, even if it did, any error would have been harmless because it could not have affected Brooks's substantial rights given the overwhelming evidence of guilt. *See* Fed. R. Crim. P. 52(a); Fed. R. Evid. 103(a).

Misapplying the categorical, elements-based approach used to determine whether a prior conviction triggers sentence enhancements under various statutes and sentencing guidelines, Brooks argues that the charged offense was not "child molestation" under Rule 414(d)(2). Brooks's brief at 40–44. This Court should reject that argument because Rule 414 is not a sentence enhancement provision. It also should reject that argument for the same

40

reasons that the Seventh Circuit rejected essentially the same argument regarding a similar rule (Fed. R. Evid. 413) in *U.S. v. Foley*, 740 F.3d 1079, 1086–88 (7th Cir. 2014). Finally, it should reject that argument because (1) the definition of "child molestation" in Rule 414(d)(2) focuses on whether the charged offense involves certain "conduct" (not on its elements) and (2), as previously discussed, the charged offense clearly constitutes "child molestation" under the plain language of Rule 414(d)(2)(C), (D), and (F). *See U.S. v. Breitweiser*, 357 F.3d 1249, 1254 (11th Cir. 2004) (although categorical approach must be used when sentence enhancement requires proof of *elements* of prior offense, court may look beyond conviction when sentence enhancements are based on defendant's prior *conduct* or *crime*).

Brooks also complains that Gopoian's uncorroborated testimony was "based solely on his memory of what occurred 44 years ago." Brooks's brief at 46. Rule 414 contains no time limit. *See* Fed. R. Evid. 414; *Hawpetoss*, 478 F.3d at 824; *Larson*, 112 F.3d at 605. And it is highly unlikely that Gopoian would have forgotten Brooks's sexual abuse.

## B.    Brooks's Communications with the Father of a 12-Year-Old Boy

The district court admitted Brooks's statements regarding his prior communications with another man about having sex with the man's 12-year-

old son because they were inextricably intertwined with the charged offense.[7]
Doc. 98 at 99–102; Doc. 100 at 90; Doc. 136 at 46. During the negotiations,
Hyre arranged a telephone call to avoid misunderstandings and to ensure that
Brooks was who he had hoped he would be before inviting Brooks into his
home. Gov't Ex. 3 at 133–34. And it was during that call—after Hyre inquired
how Brooks had become interested in this type of activity—that Brooks
mentioned the prior incident. Gov't Ex. 5 at 4–5. Brooks's statement thus was
designed to reassure Hyre about Brooks's intentions, make Hyre comfortable,
and convince Hyre to let Brooks have sex with his son. (During his post-arrest
interview, Brooks explained the prior incident. Doc. 98 at 103.)

It thus is clear that Brooks's statements arose out of the same series of
transactions as the charged offense, were necessary to complete the story of the
crime, and were inextricably intertwined with the evidence of the charged
offense. Moreover, the highly probative value of Brooks's statements was not
substantially outweighed by the danger of unfair prejudice. Finally, they did
not create a danger that the issues would be confused or the jury would be
misled, particularly given that the court instructed the jury that, although it

---

[7]It also could have admitted Brooks's statements as evidence of motive,
intent, knowledge, plan, and absence of mistake or accident under Rule
404(b)(2), as a statement by a party-opponent under Fed. R. Evid. 801(d)(2),
and as a statement against interest under Fed. R. Evid. 804(b)(3).

could consider evidence of similar uncharged acts to determine whether Brooks had the "state of mind or intent" necessary to commit the charged offense, it could not consider such evidence in determining whether Brooks had engaged in the charged conduct. Doc. 78 at 9.

For these reasons, the district court did not abuse its discretion by admitting Brooks's statements. But, even if it did, any error would have been harmless because it would not have affected Brooks's substantial rights given the overwhelming evidence of guilt. *See* Fed. R. Crim. P. 52(a); Fed. R. Evid. 103(a).

## IV. The district court did not abuse its discretion by denying Brooks's motion for a mistrial. (Brooks's Issue II)

Relying in part on documents subject to his pending motion to supplement the record, Brooks argues that the district court abused its discretion by denying his motion for a mistrial based on testimony that his counsel had elicited on cross-examination of Hyre. Brooks's brief at 24–29. (The pertinent proceedings are summarized in the Statement of the Facts, Part B.) This argument provides no basis for relief.

"A defendant is entitled to a fair trial but not a perfect one." *Lutwak v. U.S.*, 344 U.S. 604, 619 (1953). "A mistrial should be granted if the defendant's substantial rights are prejudicially affected." *U.S. v. Newsome*, 475 F.3d 1221,

1227 (11th Cir. 2007). Prejudice occurs when there is a reasonable probability that, but for the challenged error, the outcome of the trial would have been different. *See id.* The district court is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury. *Id.* This Court reviews the denial of a mistrial motion in the context of the entire trial and in light of any curative instruction. *Newsome*, 475 F.3d at 1227.

Notwithstanding any confusion regarding Brooks's ability to access his e-mail accounts, Brooks presumably knew what was in those accounts, and his counsel could have questioned him about the accounts. Brooks also could have sought to obtain the contents of the accounts by issuing a subpoena. *See* Fed. R. Crim. P. 17. In any event, Brooks and his counsel knew the government could access the accounts. Doc. 99 at 87–111. Yet Brooks did not try to access the accounts and did not bring the matter to the district court's attention before trial. *Id.* at 103–04.

In addition, Brooks's counsel elicited the challenged testimony on cross-examination. Doc. 99 at 87–88. After Hyre confirmed counsel's statement that Brooks's cellphone contained "no other e-mails … about children," counsel changed the subject and inquired, "Not on his e-mails?" *Id.* at 87. Hyre responded, "That's not true." *Id.* At that point, counsel could have moved on or requested a sidebar, but she did not do so. *Id.* at 88. Instead, counsel

44

conducted a colloquy in which counsel brought up "sex with children," Hyre answered only the questions asked, and Hyre confirmed counsel's statement that "there are other e-mails about sex with children … on his e-mail." *Id.*

Moreover, before trial, Brooks knew the jury would be hearing highly incriminating evidence (Gopoian's testimony and Brooks's statements about his communications with the father of the 12-year-old boy) that Brooks had been predisposed to commit the charged offense. So the mere fact that Brooks's e-mail accounts contained additional e-mails about sex with children (and Hyre's brief testimony to that effect) could not have had a significant impact on Brooks's ability to formulate a defense or on the trial itself, particularly given the court's jury instructions, which clarified that Brooks was on trial only for the charged conduct and offense, Doc. 78 at 9–10, and the overwhelming evidence of guilt.

Finally, although Brooks initially requested a limiting instruction, he ultimately withdrew that request. Doc. 99 at 104–09. Instead, at Brooks's request, the court prohibited the government from mentioning the challenged testimony absent further direction. *Id.* at 109–11.

Under these circumstances, Brooks has not demonstrated a reasonable probability that, but for the challenged error, the outcome of the trial would

have been different. *See Newsome*, 475 F.3d at 1227. Therefore, the district

court did not abuse its discretion by denying his motion for a mistrial.

## V. The district court correctly instructed the jury. (Brooks's Issues III, IV, V)

Brooks argues the district court (1) constructively amended the

indictment by adding "cellphone" to the facilities and means of interstate

commerce specified in the indictment, Brooks's brief at 36–39; (2) incorrectly

defined the term "induce," *id.* at 29–32; and (3) abused its discretion by

denying his request for an instruction regarding his defense that he did not

attempt to change the mental state of a minor, *id.* at 32–36. Those arguments

lack merit.

This Court reviews jury instructions to determine whether they

"misstated the law or misled the jury to the prejudice of the objecting party."

*U.S. v. Seabrooks,* 839 F.3d 1326, 1332 (11th Cir. 2016), *petition for certiorari filed*,

No. 16-8072 (U.S. Feb. 16, 2017). "District courts have wide discretion in the

style and phrasing of instructions." *U.S. v. Gonzalez*, 834 F.3d 1206, 1222 (11th

Cir. 2016). "When a jury instruction accurately expresses the applicable law,

'there is no reason for reversal even though isolated clauses may, in fact, be

confusing, technically imperfect, or otherwise subject to criticism.'" *Id.* Jury

instructions "must be evaluated not in isolation but in the context of the entire

charge." *Id.* "The failure to instruct the jury on an essential element of an offense is harmless when it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *U.S. v. Gomez*, 580 F.3d 1229, 1233 (11th Cir. 2009) (quotation marks omitted).

## A.    The district court did not constructively amend the indictment.

"A constructive amendment to the indictment occurs where the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *U.S. v. Gutierrez*, 745 F.3d 463, 473 (11th Cir. 2014). That did not happen here.

The indictment alleged that Brooks had "us[ed] facilities and means of interstate commerce, that is, the Internet and a computer." Doc. 9. In its instruction regarding the charged offense, the district court added "cellphone" to the facilities and means specified in the indictment. Doc. 78 at 12–13. That addition did not broaden the charged offense.

This Court has explained that, under 18 U.S.C. § 2422(b), a cellphone is an instrumentality of interstate commerce. *U.S. v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007). Moreover, the evidence showed that Brooks's cellphone functioned as a "hand-held computer," Doc. 99 at 140, that Brooks's cellphone was a "smart" phone that could access the Internet, Doc. 98 at 109, that all of

47

the e-mails between Brooks and Hyre had been transmitted over the Internet through Brooks's cellphone, *id.*, and that Brooks's cellphone contained all but four of those e-mails, Doc. 98 at 105–06; Doc. 99 at 147–51. Finally, at trial, Brooks renounced any argument that a cellphone is not a computer. Doc. 99 at 235, 262; *cf. U.S. v. Mathis*, 767 F.3d 1264, 1283 (11th Cir. 2014) (use of cellphone to call and send text messages constitutes use of computer as defined by 18 U.S.C. § 1030(e)(1)), *abrogated on other grounds*, *U.S. v. Johnson*, No. 16-10599, 2017 WL 745597 (11th Cir. Feb. 27, 2017) (unpublished). Therefore, the district court did not constructively amend the indictment by adding the term "cellphone."

Brooks contends that adding "cellphone" enabled the jury to convict him based solely on his telephone conversation with Hyre. Brooks's brief at 36–38; *see* Gov't Exs. 4, 5. No rational jury would have based his conviction solely on that single—though highly incriminating—piece of evidence.

Brooks also contends that the prosecutor's opening statement and closing argument broadened the indictment by "invit[ing] the jury to convict [him] based solely on his phone calls." Brooks's brief at 37–38. The prosecutor's opening statement (Doc. 98 at 8–20) and closing arguments (Doc. 100 at 42–59, 73–83) were consistent with both the evidence (Statement of the Facts, Part A) and the instructions regarding the charged offense (Doc. 78 at

12–14). The portions of the transcript that Brooks cites in his brief at 37–38 do not support a different conclusion.

Finally, Brooks contends that this case presents an open question whether the "ordinary and natural" meaning of "computer" includes a cellphone used to make a phone call. Brooks's brief at 38–39. At trial, Brooks renounced any argument that a cellphone is not a computer, Doc. 99 at 235, 262, so he has waived this argument, *see U.S. v. Olano*, 507 U.S. 725, 733 (1993), and this Court should not consider it, *see U.S. v. Gonzalez*, 834 F.3d 1206, 1217 (11th Cir. 2016). In any event, this case does not present the question posed by Brooks because, as previously discussed, the evidence shows that Brooks's cellphone functioned as a hand-held computer, that Brooks's cellphone could access the Internet, that all of the pertinent e-mails were transmitted over the Internet, and that Brooks's cellphone contained all but four of those e-mails.

**B.    The district court correctly defined the term "induce."**

The district court instructed the jury that "induce" means "to stimulate the occurrence of or to cause." Doc. 78 at 13. This Court has adopted that very definition. *U.S. v. Murrell*, 368 F.3d 1283, 1287 (11th Cir. 2004). That should be the end of the matter.

49

Brooks argues that the district court should have defined "induce" to mean "to stimulate the occurrence of or to cause *the assent of a minor to engage in unlawful sexual activity*." Brooks's brief at 29–32. According to Brooks, the court's refusal to add the italicized language "created the possibility that [he] was convicted for attempting to engage in sexual activity with a minor—a crime he was never charged with." *Id.* at 30. This argument fails on several levels.

First, the italicized language is not in *Murrell*'s definition of "induce." Moreover, the government's burden to prove that Brooks "intended to cause assent on the part of the minor, not that he acted with the specific intent to engage in sexual activity," *U.S. v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010) (quotation marks omitted), was covered by the attempt instruction and other portions of the instruction regarding the charged offense, which make clear that the government needed to prove that Brooks had attempted to persuade, induce, or entice a minor to engage in unlawful sexual activity, not that he had engaged in or had acted with the specific intent to engage in such activity, Doc. 78 at 12–14. Finally, as Brooks acknowledges in his brief, "[t]he ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that § 2422(b) is intended to prohibit acts that seek to transform or overcome the will of a minor." Brooks's brief at 30 (quoting *U.S. v. Hite*, 769 F.3d 1154, 1161

(D.C. Cir. 2014)). So the language proposed by Brooks would have been redundant.

In any event, even if this Court were to conclude that the district court should have used Brooks's definition, no rational jury that received it would have failed to convict him. *See* Statement of the Facts, Part A; Argument I. Therefore, any error in the definition of "induce" would have been harmless beyond a reasonable doubt, particularly given that the indictment also charged Brooks under the "persuade" and "entice" prongs of section 2422(b).

Brooks argues the prosecutor improperly asked the jury to convict him of "attempting to engage in sexual activity with a minor—a crime he was never charged with." Brooks's brief at 30. The prosecutor's closing arguments (Doc. 100 at 42–59, 73–83) were consistent with both the evidence (Statement of the Facts, Part A) and the instructions regarding the charged offense (Doc. 78 at 12–14). Indeed, in the first sentence of her closing argument, she argued that Brooks had "ventured to procure, induce, influence a ten-year-old boy through an adult intermediary into engaging in illicit sexual conduct." Doc. 100 at 43. Thereafter, she repeatedly emphasized the persuasion, inducement, and enticement prongs and argued that all three were satisfied. *Id.* at 49–54, 57, 75–78, 82–83. And, in the final sentence of her closing argument, she argued that Brooks had "attempted to induce or entice or persuade a minor to engage in

illicit sexual activity." *Id.* at 83. The two portions of the transcript that Brooks cites in his brief at 30—one of which actually addresses the inducement concept— do not support a different conclusion.

Brooks also asserts that "other courts have confused the [assent] issue by focusing on the intent to engage in sexual contact, which is *not* an element of § 2422(b)," and that such confusion "underscores the importance of Brooks's requested instruction." Brooks's brief at 31. Even if other courts' decisions confuse the assent issue, this Court's decisions do not. And the district court's instructions correctly stated the applicable law.

**C.     The district court did not abuse its discretion by denying Brooks's request for a theory-of-defense instruction regarding his claim that he had not attempted to change the mental state of a minor.**

A refusal to instruct a jury regarding a defendant's theory of defense is reversible error only if the requested instruction (1) correctly stated the law, (2) was not adequately covered in the instructions given, (3) concerned an issue so substantive that its omission impaired the defendant's ability to present a defense, and (4) dealt with an issue properly before the jury. *U.S. v. Votrobek*, 847 F.3d 1335, 1344 (11th Cir. 2017). The instruction must have legal support and some basis in the evidence. *Id.* Thus, a district court may refuse to instruct the jury on a defense where the evidence used to support it, if believed, fails to establish a legally cognizable defense. *Id.*

52

Brooks argues that the district court should have given the second theory-of-defense instruction that he submitted at trial. Brooks's brief at 32–36; *see* Doc. 100 at 3. Although that instruction is not referenced on the docket, it would have addressed Brooks's contention that he did not attempt to cause a minor to assent to engage in unlawful sexual activity. *See* Doc. 100 at 4. The court denied the instruction because (1) it was "essentially the inverse of what the offense instruction is to begin with," (2) it would have been confusing, (3) it would have been inconsistent with the court's denial of the government's request for additional language regarding the adult-intermediary component of the charged offense, and (4) Brooks had failed to present "evidence that could be considered legally sufficient to render [him] innocent." *Id.* at 4, 13, 20–21. That ruling was not an abuse of discretion.

Brooks's proposed instruction regarding the "assent" issue was another attempt to modify the definition of "induce." And, as explained in Argument V.B., the district court correctly defined that term, and the attempt instruction and other portions of the instruction regarding the charged offense covered the "assent" issue. *See* Doc. 78 at 12–14. Moreover, the court instructed the jury that the government was required to prove that Brooks was guilty beyond a reasonable doubt, that it must acquit Brooks if the government failed to meet that burden, and that it must follow the court's statement of the law. Doc. 78 at

1–3. Consequently, the absence of the requested instruction did not impair Brooks's ability to present his defense. Finally, any error in denying the requested instruction would have been harmless beyond a reasonable doubt because no rational jury that received it would have failed to convict Brooks. *See* Statement of the Facts, Part A; Argument I.

Brooks argues that the district court erred by relying on *U.S. v. Alvarado*, 808 F.3d 474 (11th Cir. 2015), in denying the requested instruction because he had not presented any evidence to support it. Brooks's brief at 33–34. In *Alvarado*, this Court discussed the tension in its decisions regarding the evidentiary foundation required for various theory-of-defense instructions. *Alvarado*, 808 F.3d at 483–95. But it did not resolve that tension. *Id.* at 489. In any event, even construing the evidence in the light most favorable to the defense and applying the standard that Brooks espoused, the evidence did not provide a foundation for a legally cognizable defense. *See* Statement of the Facts, Part A; Argument I. For that reason and the reasons discussed in the preceding paragraph, any erroneous reliance on *Alvarado* would have been harmless beyond a reasonable doubt.

Brooks also cites *U.S. v. Opdahl*, 930 F.2d 1530 (11th Cir. 1991), for the proposition that "a defendant need not introduce evidence to obtain an innocent-intent theory of defense instruction." Brooks's brief at 34–35. *Opdahl*

54

does not help him. Unlike the instruction in *Opdahl*, 930 F.3d at 1534, and as previously discussed, the instructions as given covered the requested instruction. *See U.S. v. Walker*, 26 F.3d 108, 110 & n.2 (11th Cir. 1994) (unlike instruction in *Opdahl*, requested instruction would have been superfluous because instructions as given addressed elements of requested charge).

## VI.    Brooks is not entitled to relief based on cumulative error. (Brooks's Issue IX)

To establish cumulative error, Brooks first would have to establish at least two errors. *See U.S. v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004). He failed to establish any error at all, *see* Arguments I–V, let alone cumulative error warranting a new trial. *See Waldon*, 363 F.3d at 1110 (if there are no errors or only a single error, there can be no cumulative error).

## Conclusion

The United States requests that this Court affirm the judgment of the district court.

Respectfully submitted,

W. STEPHEN MULDROW
Acting United States Attorney

YVETTE RHODES
Assistant United States Attorney
Appellate Division

By:    *s/ Peter J. Sholl*
PETER J. SHOLL
Assistant United States Attorney
Appellate Division
USA No. 082
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
peter.sholl@usdoj.gov

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 12,965 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P. 32(a)(7)(B).

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was

sent by CM/ECF on March 31, 2017, to:

CONRAD B. KAHN
Federal Public Defender's Office

*Counsel for George Brooks*

s/ *Peter J. Sholl*
PETER J. SHOLL
Assistant United States Attorney

gkpr no 3/31/17

b_Brooks, George_US response brief FINAL pxs.docx