IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

APPEAL NO. 16-14959-AA

UNITED STATES OF AMERICA,

Appellee,

v.

GEORGE ADRIEN BROOKS,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

REPLY BRIEF

Donna Lee Elm
Federal Defender

Conrad Kahn
Research and Writing Attorney
Appellate Division
Florida Bar No. 104456
201 S. Orange Avenue, Ste. 300
Orlando, Florida 32801
Telephone: (407) 648-6338
Facsimile: (407) 648-6765
Email: Conrad_Kahn@fd.org
Counsel for Appellant

**Appeal No. 16-14959-AA**

*United States of America v. George Adrien Brooks*

**CERTIFICATE OF INTERESTED PERSONS**

The Certificates of Interested Persons in Mr. Brooks' Initial Brief and the Government's Answer Brief are complete.

## TABLE OF CONTENTS

Certificate of Interested Persons ...................................................................C1

Table of Contents ....................................................................................... i

Table of Citations........................................................................................ii

Preliminary Statement ................................................................................ 1

Reply Arguments and Citations of Authority ............................................. 2

    I.     The district court erred by denying Mr. Brooks'
           requested instruction on the definition of "induce" ................................. 2

    II.    Attempted enticement of a minor under § 2422(b) does
           not categorically qualify as a "child molestation" crime
           under Rule 414 ....................................................................................... 5

    III.   The government's Rule 16 violation requires a new trial....................... 9

    IV.   The district court constructively amended the indictment
           by including the term "cell phone" in the jury instructions
           as an additional means of interstate commerce........................................ 12

    V.    The district court clearly erred in overruling Mr. Brooks'
           *Batson* objections ................................................................................. 14

Conclusion ................................................................................................. 17

Certificate of Compliance .......................................................................... 18

Certificate of Service ................................................................................. 18

## TABLE OF CITATIONS

**Cases**                                                                                      **Page(s)**

*Batson v. Kentucky*, 476 U.S. 79 (1986).......................................................... 14, 16

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) ................................... 12

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).................... 16, 17

*Nijhawan v. Holder*, 557 U.S. 29 (2009) .................................................................. 7

*Pugliese v. Pukka Dev. Corp.*, 550 F.3d 1299 (11th Cir. 2008)............................ 17

*Shepard v. United States*, 544 U.S. 13 (2005) .......................................................... 7

\* *Snyder v. Louisiana*, 552 U.S. 472 (2008).............................................................. 15

*United States v. Breitweiser*, 357 F.3d 1249 (11th Cir. 2004) ................................. 7

*United States v. Burge*, 407 F.3d 1183 (11th Cir. 2005) .......................................... 7

\* *United States v. Camargo-Vegara*, 57 F.3d 993 (11th Cir. 1995)............... 9, 10, 11

*United States v. Emmanuel*, 565 F.3d 1324 (11th Cir. 2009)................................. 10

*United States v. Foley*, 740 F.3d 1079 (7th Cir. 2014)................................... 6, 7, 8

\* *United States v. Lee*, 603 F.3d 904 (11th Cir. 2010) ........................................... 3, 4

*United States v. Madera*, 528 F.3d 852 (11th Cir. 2008) ....................................... 17

*United States v. McGuire*, 706 F.3d 1333 (11th Cir. 2013)................................. 6, 7

*United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004)........................................ 2

*United States v. Newsome*, 475 F.3d 1221 (11th Cir. 2007).................................... 9

\* *United States v. Noe,* 821 F.2d 604 (11th Cir.1987)......................................... 9, 10

*United States v. Pascual*, 606 F.2d 561 (5th Cir. 1979) ......................................... 12

*United States v. Prickett*, 839 F.3d 697 (8th Cir. 2016) ........................................... 6

*United States v. Rafidi*, 829 F.3d 437 (6th Cir. 2016) ............................................... 6

*United States v. Robertson*, 736 F.3d 1317 (11th Cir. 2013).................................. 14

\* *United States v. Rodriguez*, 799 F.2d 649 (11th Cir. 1986)............................. 10, 11

*United States v. Serafin*, 562 F.3d 1105 (10th Cir. 2009) ......................................... 6

*United States v. Spell*, 44 F.3d 936 (11th Cir. 1995) ................................................ 8

*Yee v. Escondido*, 503 U.S. 519, 112 S. Ct. 1522 (1992) ....................................... 16

**Statutes**

18 U.S.C. § 924(c) ............................................................................................. 6, 7

18 U.S.C. § 924(e) ................................................................................................. 7

\* 18 U.S.C. § 2422(b) ....................................................................... *passim*

18 U.S.C. § 2423(a) ............................................................................................... 8

**Other Authorities**

Eleventh Circuit Pattern Jury Instructions Criminal No. O92-2 (2016)................... 2

F. R. Crim. P. 16 ........................................................................................... 9, 10, 11

F.R.E. 413 ............................................................................................................... 8

\* F.R.E. 414 ................................................................................... *passim*

iii

**PRELIMINARY STATEMENT**

By filing this reply, Mr. Brooks does not waive any issue or argument raised in his initial brief, nor does he concede any issue or argument made by the government in its answer brief.

Reply Arguments and Citations of Authority

**I.    The district court erred by denying Mr. Brooks' requested instruction on the definition of "induce."**

The jury was instructed that "induce" means "to stimulate the occurrence of or to cause."  Doc. 78 at 13; *see* Eleventh Circuit Pattern Jury Instructions (Criminal) No. O92-2 (2016).  That definition begs the questions of, "to stimulate the occurrence of *what*," or "to cause *what*"?[1]  The answer given by the district court's instructions was that the "what" was inducing a minor to engage in unlawful sexual activity.  *See* Doc. 78 at 12–13 ("induce . . . anyone under 18 years old to engage in any sexual activity for which any person could be charged with a criminal offense"); *id*. ("to engage in sexual activity"); *id*. ("to engage in unlawful sexual activity").

The district court's answer was incorrect as a matter of law.  What 18 U.S.C. § 2422(b) prohibits is not "to stimulate the occurrence of or to cause a minor to engage in unlawful sexual activity."  What is prohibited is "to stimulate the occurrence of or to cause *the assent of* a minor to engage in unlawful sexual

---

[1] That this Court has approved defining "induce" as "to stimulate the occurrence of or to cause" does not permit the district court to incorrectly instruct on the "what" that is intended by the inducing. *See* Government's Brief at 49–50; *United States v. Murrell*, 368 F.3d 1283, 1287 (11th Cir. 2004).

2

activity." *See United States v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010) ("With regard to intent, the government must prove that the defendant intended to cause assent on the part of the minor, not that he 'acted with the specific intent to engage in sexual activity.'"). The instruction requested by the defense would have correctly explained what the government had to prove.

The government now argues that the attempt instruction, in conjunction with the instruction on the substantive offense, adequately informed the jury of what the government needed to prove. Government's Brief at 50. The attempt instruction, however, is just as silent as the substantive instruction about the need to prove that Mr. Brooks attempted to cause "the assent of a minor" to engage in unlawful sexual activity. *See* Doc. 78 at 14. Moreover, the attempt instruction suffers from the same infirmity as the instruction on the substantive offense. The criminal act proscribed by § 2422(b) is not an attempt to persuade or induce or entice a minor *to engage in* unlawful sexual activity; it is an attempt to persuade or induce or entice a minor *to assent to* engaging in unlawful sexual activity. *Lee*, 603 F.3d at 914 ("The statute criminalizes an intentional attempt to achieve a **mental** state – a minor's assent.").

The government also asserts that the ordinary meaning of the terms "persuade," "induce," and "entice," sufficiently capture the distinction at issue here; therefore, the language proposed by Mr. Brooks would have been redundant.

3

Again, the government is mistaken. As an initial matter, even assuming *arguendo* that the plain language sufficiently covered this distinction, there would still be an error since the jury instructions did not rely on the plain and ordinary meaning of "inducement." Instead, the instructions defined inducement as a term of art, and as discussed above, that instruction was not only incomplete, but also incorrect as a matter of law. The inadequacy of the instruction is underscored by the fact that several circuit courts have confused this distinction. Initial Brief at 31. The government recognizes that point as well. Government's Brief at 52. Indeed, this Court has gone out of its way to make this distinction clear. *Lee*, 603 F.3d at 914. If several circuits have confused the distinction, clearly a jury could as well. Thus, the government's assertion that the plain language of the statute sufficiently conveyed this distinction is incorrect.

The government also argues that the prosecutor's closing arguments were consistent with the instructions regarding the charged offense. Government's Brief at 51. Again, as discussed above, the instructions were erroneous. The prosecutor's reliance on those instructions during closing arguments, then, far from mitigating the error, made the error even more harmful.

The government also argues that "no rational jury" could have failed to convict regardless of any error in the definition of "induce." *Id*. This argument should be rejected. Mr. Brooks recognizes that the violation here is subject to

4

harmless-error review, but the government has the burden of demonstrating harmlessness.   Initial Brief at 31–32.   Aside from summarily stating that "no rational jury" could have failed to convict Mr. Brooks, the government has not even attempted to meet its burden.  Nor could it.  As explained in the initial brief (at 31–32, 49–51), Mr. Brooks' actions were clearly susceptible of being viewed by a rational jury as attempting to have sex with a minor, and not as attempting to gain the assent of a minor to engage in sexual activity.   Accordingly, for the reasons set forth here and in the initial brief, the district court erred in denying Mr. Brooks' requested definition on the definition of "induce."[2]

## II.   Attempted enticement of a minor under § 2422(b) does not categorically qualify as a "child molestation" crime under Rule 414.

In the initial brief, Mr. Brooks explained in detail why the text and structure of Rule 414 requires courts to use a categorical approach when determining whether an individual has been charged with a "child molestation" crime.   Initial Brief at 39–44.   Instead of directly responding to Mr. Brooks' text-based arguments, the government responds with a one-paragraph argument, asserting that

---

[2] The government also argues that the district court did not err in denying Mr. Brooks' theory-of-defense instruction since the instructions given covered the requested instruction.  Government's Brief at 52–55.  However, as stated herein, the instructions did not sufficiently cover Mr. Brooks' requested theory-of-defense instruction.  Thus, the government is incorrect on that point as well.

5

Rule 414 requires a circumstance-specific approach since: (1) Rule 414 is not a sentencing enhancement provision; (2) the rule "focuses on whether the charged offense involves certain 'conduct'"; and (3) the Seventh Circuit rejected a similar argument in *United States v. Foley*, 740 F.3d 1079, 1086–88 (7th Cir. 2014). Government's Brief at 40–41. The government is wrong.

First, the government argues that a categorical approach is inapplicable because Rule 414 is not a sentencing enhancement provision. The government thus suggests the categorical approach applies only to sentencing enhancement provisions. However, that is incorrect. For example, 18 U.S.C. § 924(c) criminalizes using or carrying a firearm during and in relation to a "crime of violence," or possessing a firearm in furtherance of such an underlying charge. To determine whether an offense qualifies as a "crime of violence," courts use a categorical approach. *See United States v. McGuire*, 706 F.3d 1333, 1336–37 (11th Cir. 2013); *United States v. Prickett*, 839 F.3d 697, 698 (8th Cir. 2016); *United States v. Rafidi*, 829 F.3d 437, 444 (6th Cir. 2016); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015); *United States v. Serafin*, 562 F.3d 1105, 1108 (10th Cir. 2009). Thus, the government's argument that the categorical approach is only applicable to sentencing enhancement provisions is incorrect.

Second, the government relies on the word "conduct" in Rule 414 to suggest a categorical approach is not intended. Government's Brief at 41. However, Mr.

6

Brooks addressed this point in his initial brief. Initial Brief at 43. Indeed, other statutes, such as the residual clause in the Armed Career Criminal Act, discuss "crimes" that "*involve conduct* [presenting] a serious potential risk of physical injury to another," yet the Supreme Court has interpreted this language to require a categorical approach. 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added); *Nijhawan v. Holder*, 557 U.S. 29, 36 (2009) ("While this language poses greater interpretative difficulty, the Court held that it too refers to crimes as generically defined.").[3] Thus, the fact that rule discusses certain "conduct" does not support the government's position.[4]

Finally, the government incorrectly relies on *Foley*. In *Foley*, the defendant was charged with child pornography production, distribution, and possession under 18 U.S.C. chapter 110, as well as transporting a minor across state lines to engage

---

[3] The residual clause in § 924(c) also discusses crimes that "involve" certain conduct. 18 U.S.C. § 924(c)(3)(B). Yet, that statute also calls for a categorical approach. *McGuire*, 706 F.3d at 1336–37.

[4] The government also relies on *United States v. Breitweiser*, 357 F.3d 1249, 1254 (11th Cir. 2004), to support its position that Rule 414 requires a circumstance-specific approach as opposed to a categorical approach. However, *Brietweiser* merely explains that courts may use a modified version of the categorical approach when evaluating whether prior convictions qualify under sentencing enhancement statutes. *Id.* Under that approach, courts may look at certain court documents to determine what part of a statute a defendant violated. *Id.; see Shepard v. United States*, 544 U.S. 13 (2005); *United States v. Burge*, 407 F.3d 1183, 1187 (11th Cir. 2005). Thus, the government's reliance on *Brietweiser* is misplaced.

in a sex act under 18 U.S.C. § 2423(a).  *Foley*, 740 F.3d at 1086–88.  On appeal, the defendant argued that the district court erroneously admitted evidence under Rule 413 because the offenses charged against him did not categorically qualify as "sexual assault" crimes.  *Id.*  The court rejected Mr. Foley's argument, stating that he failed to point to "any authority or policy reason" as to why the rule should be interpreted to require a categorical approach.  *Id.*; *see* Brief for Appellant at 29–30, *Foley*, 740 F.3d 1079 (No.13-1386).  Contrary to *Foley*, Mr. Brooks has provided a detailed explanation, based on both the text and structure of the rule, as to why a categorical approach is required.

As a final matter, it makes sense that Rule 414 would require a categorical approach to determine whether the instant offense is a "child molestation" crime. If judges must determine whether a charged offense qualifies as a "child molestation" offense on a case-by-case basis, trials will devolve into mini-trials where trial judges have to engage in an elaborate fact-finding process.  *See United States v. Spell*, 44 F.3d 936, 939 (11th Cir. 1995).  Clearly, that is not what the drafters of the Rule intended.  Thus, for the reasons explained herein and Mr. Brooks' initial brief, Rule 414 requires courts to use a categorical approach when determining whether the defendant has been charged with a "child molestation" crime, and attempted enticement under § 2422(b) does not categorically qualify as a "child molestation" crime.

### III.    The government's Rule 16 violation requires a new trial.

Notably, the government does *not* argue it complied with Rule 16. Government's Brief at 43–46.  Instead, it argues that the "confusion" that arose at trial as a result of its Rule 16 violation is immaterial since Mr. Brooks knew, or could have known, about the emails, he declined the district court's attempts to issue a mitigating instruction, and the evidence of his guilt was overwhelming.  *Id.* Again, the government is mistaken.

As an initial matter, the government misapplies the standard for evaluating whether a defendant's substantial rights have been prejudiced.  The government relies on *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007), where this Court addressed the denial of a mistrial motion based on a prosecutor's improper remarks during opening statement.  *Newsome*, however, did not address a discovery violation.  As explained in Mr. Brooks' initial brief, whether a discovery violation has prejudiced a defendant's substantial rights is not determined by simply "weighing all the evidence introduced."  Initial Brief at 24–29; *United States v. Noe,* 821 F.2d 604, 607 (11th Cir.1987) ("We refuse to adopt such a rule, for it would encourage precisely the 'trial by ambush' the Federal Rules of Criminal Procedure were designed to prevent.").  Rather, this Court must consider whether the government's violation unduly surprised Mr. Brooks or denied him an opportunity to adequately present his defense.  *Id.*; *United States v. Camargo-*

*Vegara*, 57 F.3d 993, 998–99 (11th Cir. 1995); *United States v. Rodriguez*, 799 F.2d 649, 651–54 (11th Cir. 1986).

Mr. Brooks was undoubtedly surprised by the government's mid-trial revelation. And to say it substantially affected his entrapment defense would be an understatement. Mr. Brooks' counsel was clearly caught off guard by Agent Hyre's testimony, and immediately after the prejudicial comments were elicited, the jury was excused for an extended period, drawing significant and undue attention to the remarks. Doc. 99 at 92–111. It is true that Mr. Brooks declined the district court's invitation to read a limiting instruction, but that decision makes eminent sense. This Court has recognized that a criminal defendant may want to avoid a curative instruction that could further draw unwarranted attention to a prejudicial comment. *See United States v. Emmanuel*, 565 F.3d 1324, 1335 (11th Cir. 2009). Thus, Mr. Brooks' attempt to mitigate the damage caused by the government should not factor into this Court's analysis. As recognized in *Camargo-Vegara*, this Court should not "penalize [Mr. Brooks] and reward the government for [Mr. Brooks'] reasonable attempts to mitigate the government's breach of the discovery rules." 557 F.3d at 999.

That Mr. Brooks may have known what was in his own e-mail accounts or could have subpoenaed the e-mails is irrelevant to whether there was a Rule 16 violation. Indeed, in *Noe* and *Camargo-Vergara*, the defendants were confronted

with their own statements, and in *Rodriguez*, the defendant was confronted with the contents of his wallet. *See* Initial Brief at 24–29. Clearly, those defendants knew the content of the evidence being admitted against them. Nevertheless, the defendants' pre-existing knowledge about the evidence did not factor into this Court's analysis when ruling in each case that the government committed a reversible Rule 16 violation.

At bottom, the government told Mr. Brooks the passwords to his e-mail accounts were being changed and he would not have access to them. Mr. Brooks took the government at its word—not only about his access to the e-mail accounts, but also that it would honor his request for full discovery under Rule 16. Mr. Brooks' reliance on the government's word can hardly be said to be a failure to exercise due diligence. A defendant should be entitled to take the government at its word, concentrate on his trial preparation, and receive an acquittal if he engenders reasonable doubt amongst the jury.

At the end of the day, Rule 16 is designed to ensure a fair trial. *Camargo-Vegara*, 57 F.3d at 999. There is nothing fair about what the government did here. To be sure, "a new trial . . . may likely result in another guilty verdict. Nevertheless, the vindication of Rule 16, and notice to prosecutors in this Circuit that they must effectively comply with it, leave no choice but to reverse [this]

conviction and remand for a new trial." *United States v. Pascual*, 606 F.2d 561, 566 (5th Cir. 1979).[5]

### IV. The district court constructively amended the indictment by including the term "cell phone" in the jury instructions as an additional means of interstate commerce.

The government essentially argues that including the term "cell phone" in the jury instructions did not constructively amend the indictment since Mr. Brooks' cellphone had the ability to operate as a computer — *i.e.* it could access the internet and send e-mails. Government's Brief at 47–49. To be sure, Mr. Brooks' cell phone had those features, and indeed, he used those features. However, what the government fails to appreciate is that while the definitions of "computer" and "cell phone" substantially overlap, they are *not* identical. A cell phone may certainly operate as a computer in some instances, but it also may operate in ways that would not naturally be referred to as operating a computer, such as using a cell phone to make a basic telephone call.

Here, the differences between those two terms are important since, as the government recognizes, one of the most "highly incriminating" pieces of evidence introduced at trial was a phone call between Mr. Brooks and Agent Hyre. *Id.* at 48.

---

[5] The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

And although the government recognizes the phone call was extremely damaging, it concludes, *ipse dixit*, that "no rational jury would have based [Mr. Brooks'] conviction solely" on the phone call.    *Id.*   However, as explained in the initial brief, that is exactly what the prosecutor invited the jury to do during her closing and opening statements.   Initial Brief at 37–38.   At a minimum, the instructions certainly allowed the jury to do it, and there is no way to know how much the jury relied on that call during its deliberations.   Therefore, it is clear that the inclusion of the term "cell phone" in the jury instructions resulted in a constructive amendment, and because Mr. Brooks' conviction may have been based solely, or in large part, on his phone call with Agent Hyre, the government cannot meet its burden to show the constructive amendment was harmless.

As a final note, the government argues that, at trial, Mr. Brooks "renounced any argument that a cell phone is not a computer."   Government's Brief 48–49. The government is reading the trial transcript unmoored from its context.   At trial, Mr. Brooks said he would refrain from arguing that a cell phone is not a computer. Doc. 99 at 235.   That was true at trial, and it is true now.   Mr. Brooks does not argue that a cell phone is never a computer.   As stated above, Mr. Brooks recognizes that a cell phone may, in some instances, operate as a computer. Reading the transcript in context, however, it is clear that Mr. Brooks' argument has always been that the including the term "cell phone" in the jury instruction

13

would broaden the indictment because the terms "cell phone" and "computer" are not the same. *Id.* at 235–37. Thus, the government's suggestion that Mr. Brooks somehow waived this argument is unfounded.

### V.     The district court clearly erred in overruling Mr. Brooks' *Batson* objections.

The government argues that the district court "made no finding that Brooks had established a prima facie case, as required by step one." Government's Brief at 30–31. The government is incorrect. While not explicitly stated, the court's requests to the prosecutor to respond to the defense's *Batson* challenges show that the court found a prima facie case had been made. "Although the court did not elaborate on how the government met its burden at step one, the district court's prima facie finding was implicit. . . . [W]e give deference to the district court's implicit prima facie finding of discrimination." *United States v. Robertson*, 736 F.3d 1317, 1327 (11th Cir. 2013).

Below, the government sought to exercise a peremptory strike against venireperson Ramachandran ostensibly due to his "demeanor." Doc. 97 at 179. The government now relies on "the great deference afforded to the district court" when ruling on a *Batson* claim. Government's Brief at 33.

Mr. Brooks agrees that "deference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising

a strike." *Snyder v. Louisiana*, 552 U.S. 472, 479 (2008).  Here, however, just as in *Snyder*, "the record does not show that the trial judge actually made a determination concerning Mr. [Ramachandran's] demeanor."  *Id*.  Instead, the district court simply reviewed its exchange with Ramachandran, and stated the government had not engaged in a pattern of discrimination.  Doc. 97 at 180.  Thus, as in *Snyder*, "we cannot presume that the trial judge credited the prosecutor's assertion" about Mr. Ramachandran's demeanor.  *Id*.  In his initial brief, Mr. Brooks primarily relied upon *Snyder*.  Initial Brief at v.  The government's brief does not even mention *Snyder*.

Regarding venireperson Aviles, the prosecutor's stated reason for exercising a peremptory strike was that she had "highlighted" him for a possible challenge because she lacked "sufficient information" about his background.  Doc. 97 at 184–85.  The prosecutor, though, never asked the court to inquire about Aviles' background.  *See id*. at 150–61.  The court agreed to and did ask several questions requested by defense counsel, so surely would have done the same for the prosecutor had she been genuinely concerned about her lack of information regarding Aviles.  *Id*. at 162–67.

Now, in its brief, the government provides nothing more than a restatement of the reason given by the prosecutor for seeking to strike Aviles.  Government's Brief at 31–32.  No attempt is made to justify or explain the prosecutor failing to

15

inquire further about Aviles if she was truly concerned that she did not have enough knowledge about his background. Given the lack of any attempt to inquire into Aviles's background and the lack of any explanation for the failure to inquire, the court clearly erred in determining, without more, that the proffered reason was race-neutral. Willful blindness should not be a reason to excuse race-based peremptory strikes.

The government seeks plain error review on Mr. Brooks' argument comparing Aviles with six other similarly situated jurors who were not struck by the government. Government's Brief at 34–35; *see* Initial Brief at 23. The district court, though, which had seen and heard all of the venire's answers to questions, presumably took this comparison into account when determining that a prima facie case of discrimination had been made such that an explanation for the peremptory strike was needed.

In any event, Mr. Brooks need not demonstrate plain error because he preserved the claim below by objecting to the peremptory strike on the basis of *Batson*. Doc. 97 at 183. The argument made here, comparing Aviles to other jurors, simply enlarges the argument made below. *See Yee v. Escondido*, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 330–

31 (2010) (same); *Pugliese v. Pukka Dev. Corp.*, 550 F.3d 1299, 1304 n.3 (11th Cir. 2008) ("Although new claims or issues may not be raised, new arguments relating to preserved claims may be reviewed on appeal."); *United States v. Madera*, 528 F.3d 852, 854 n.1 (11th Cir. 2008) (same).

## CONCLUSION

For the reasons stated herein and in his initial brief, Mr. Brooks respectfully requests that this Court vacate his conviction.

Respectfully submitted,

Donna Lee Elm
Federal Defender

*/s/ Conrad Kahn*
Conrad Kahn
Research and Writing Attorney
Appellate Division
Florida Bar No. 104456
201 S. Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: (407) 648-6338
Facsimile: (407) 648-6765
E-Mail: Conrad_Kahn@fd.org
Counsel for Mr. Brooks

17

**CERTIFICATE OF COMPLIANCE**

This brief contains 3,785 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and therefore complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B).

*/s/ Conrad Kahn*
Conrad Kahn
Counsel for Mr. Brooks

**CERTIFICATE OF SERVICE**

I certify that on April 28, 2017, a copy of the foregoing Reply Brief was filed using CM/ECF, which will automatically serve notice on Assistant United States Attorney Peter J. Sholl.

*/s/ Conrad Kahn*
Conrad Kahn
Counsel for Mr. Brooks